DANIEL L. SHULL, APPELLANT, V. DAIN, KALMAN & QUAIL, INC., A CORPORATION, APPELLEE.

267 N. W. 2d 517

Filed June 28, 1978. No. 41569.

Robert B. Creager for Berry & Anderson, for appellant.

Knudsen, Berkheimer, Endacott & Beam, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

McCOWN, J.

This is a declaratory judgment action to determine the usury limit applicable to funds advanced by defendant to plaintiff under the provisions of a stock margin contract. The District Court determined that the usury law of Minnesota was applicable to the margin contract and had been applied, and dismissed plaintiff's petition. Plaintiff has appealed.

The case was tried on a stipulation of facts. The plaintiff, Daniel L. Shull, is a resident of Lincoln, Nebraska, and was a customer of the defendant beginning in 1968. The defendant, Dain, Kalman & Quail, Inc., is a Delaware corporation engaged in the securities business, with home offices in Minneapolis, Minnesota, and an office in Lincoln, Nebraska.

On March 13, 1972, the plaintiff executed the margin contract in Lincoln, Nebraska, and it was forwarded to defendant's principal place of business in Minneapolis, Minnesota, for approval, where it was accepted by an officer of the defendant. The relevant contract provisions involved here are: "8. The undersigned agrees to pay interest upon all debit balances at such rate or rates as you may from time to time determine to be fair and reasonable and to pay such other charges as you may make to cover your facilities and extra services. * * *

"15. Interest is charged to your margin account at a specified rate as shown on your monthly state-

ment. This rate may be changed from time to time with fluctuating money market rates or for other reasons."

Following the execution of the margin contract the defendant mailed a letter to plaintiff explaining the interest charges on the margin account. That letter stated: "The annual rate of interest charged on the average debit balance of your margin accounts with Dain, Kalman & Quail, Incorporated will be computed, in accordance with rules of the New York Stock Exchange, at a rate which is at least ½ of 1% above the call money rate from time to time in effect. We may, however, charge at a higher rate depending upon such factors as the size of your average debit balance and the activity in your account; provided, that in no event will the rate of interest charged exceed that allowed by applicable interest statutes. The rate applicable to your account is subject to change without notice based upon changes in the call money rate. If the interest rate is changed for any other reason, we will give at least 30 days' prior written notice."

Beginning in March 1972, and continuing until approximately 1975, the plaintiff entered into various security transactions with the defendant on margin. Monthly account statements, each of which showed the interest rate charged for the accounting period, were sent to plaintiff by defendant from Minneapolis.

The amount of money loaned to the plaintiff by the defendant was provided by the defendant from funds owned or borrowed by the defendant in Minnesota. The securities purchased on margin by plaintiff which secured the loan were held and sequestered either in defendant's Minnesota or New York City office in "street name" or in the name of the defendant or other nominees for the purpose of immediate transfer. Orders by plaintiff for the purchase and sale of securities were given to defendant's branch office in Lincoln, Nebraska, and were transmitted to

and recorded in the Minneapolis office of the defendant, and executed in New York City. Reports of execution of orders were mailed from the Minneapolis office of the defendant to the plaintiff. Confirmation of securities transactions were computed and originated in Minnesota. When plaintiff paid any money to the defendant for securities purchased, or for margin calls, the funds were paid in Lincoln, Nebraska, deposited locally, and then forwarded to Minneapolis, Minnesota, by the defendant's branch office in Lincoln.

At all times relevant here the maximum rate of interest permitted by Nebraska law on margin transactions was 9 percent. Under Minnesota law the maximum permissible interest rate was 10 percent until August 1, 1973, and after March 1, 1974. From August 1, 1973, until March 1, 1974, the maximum rate of interest in Minnesota was 8 percent. At the inception of the margin contract here in March 1972, the interest rate was 5.75 percent and it rose in gradual steps to 8 percent approximately 1 year later. Until August 1, 1973, the interest charged was always less than 9 percent, except for a few days in July of 1973. From August 1, 1973, until March 1, 1974, the interest rate charged was 8 percent, and from approximately April 1974, until the conclusion of the transactions, the interest charged was 10 percent. From August 1, 1973, until the conclusion of the dealings of the parties the interest rate was generally at the maximum level allowed by Minnesota law. For approximately half of that time the interest charge was 1 percent less than the Nebraska maximum, and for approximately half of the time the interest rate was 1 percent more than the Nebraska maximum. The total amount of interest on the entire transaction was $11,588.89, and the total amount of interest charged in excess of 9 percent was $3610.15.

Following trial the District Court found that the

"last act" necessary to make the margin agreement binding was the approval by the defendant, which took place in the State of Minnesota, and that the usury law of Minnesota must therefore be applied to the margin agreement. The District Court dismissed plaintiff's petition and this appeal followed.

The sole issue on this appeal is whether the usury law of the State of Nebraska or the usury law of the State of Minnesota applied to the margin contract involved here. There was no specific provision in the contract as to which law was to be applied.

At various times, and under varying circumstances, this court has applied the "last act" test; Dunlop Tire & Rubber Corp. v. Ryan, 171 Neb. 820, 108 N. W. 2d 84; a place of execution and place of performance rule; Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240; and very recently has held that where a contract specifies that the law of a particular state is to be applied and that state bears some relationship to the transaction, the contract will be enforced, if it is enforceable, under that state's law. See Exchange Bank & Trust Co. v. Tamerius, 200 Neb. 807, 265 N. W. 2d 847.

Under the general principles followed by this court, issues of validity were determined under the laws of the jurisdiction in which the contract took effect. This court has had no hesitation in applying usury laws of other states, even though they exceed the interest levels allowable under the laws of this state. The general choice of law rules applicable here are set out in Restatement, Conflict of Laws 2d, section 188, page 575. That section first provides that the rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under general choice of law principles. The section also provides that in the absence of an effective choice of law by the parties, the con-

tacts to be taken into account in applying general choice of law principles to determine the law applicable include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue."

As is true in the case at bar, it is often difficult to determine the actual effective location of many of the contacts to be taken into account, as well as difficult to determine which of two different states has "the most significant relationship to the transaction and the parties." One difficulty with relying on such general rules as the criteria for determining the governing law is that the place of performance or execution is often arbitrarily and randomly selected. The choice of law is thus left to happenstance rather than to a rational decision by the parties or by a court which attempts to protect the justified expectations of the parties, as well as the relative interests and policies of the interested states.

Such considerations lead to the conclusion that the more specific application of the rule of Restatement, Conflict of Laws 2d, section 203, page 649, is appropriate. That rule is: "The validity of a contract will be sustained against the charge of usury if it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of § 188."

The rationale of the rule of section 203 is stated in Comment b to that section: "A prime objective of both choice of law and of contract law is to protect the justified expectations of the parties. Subject only to rare exceptions, the parties will expect on

entering a contract that the provisions of the contract will be binding upon them. For this reason, the courts will not apply an invalidating rule to strike down the contract unless the value of protecting the justified expectations of the parties is outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied. Usury is a field where this policy of validation is particularly apparent.''

In the case now before us the maximum permissible interest rates of the two states vary only slightly. For a portion of the time involved, the maximum allowable rate in Minnesota was 1 percent lower than in Nebraska and for a portion of the time involved, it was 1 percent higher. There is no doubt that the parties here expected the provisions of the contract to be binding upon them and the record does not reflect any dispute or controversy as to whether the rates were fair or computed in accordance with the provisions of the contract. The only controversy is as to which usury limit was applicable.

Under current Nebraska law the maximum general interest rate is now 11 percent per annum, and it is now lawful to contract for and receive on a margin contract any rate of interest the parties may expressly agree upon. §§ 45-101.03 and 45-101.04(6), R. S. Supp., 1976. Neither of these statutes were in effect at the time of the matters involved here. Nevertheless they point up the fact that under circumstances such as those present here, courts deem it more important to sustain the validity of a contract and thus to protect the expectations of the parties than to apply the usury law of any particular state.

Recent cases from other jurisdictions reach the same results under similar circumstances for somewhat differing reasons. See, U. S. Manganese Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 576 F. 2d 153 (8th Cir., May 24, 1978); Gamer v. duPont

Glore Forgan, Inc., 65 Cal. App. 3d 280, 135 Cal. Rptr. 230 (1976).

The stipulated facts of the present case establish that the margin contract involved here had a substantial relationship to both Minnesota and Nebraska, and that the interest rate permitted by the general usury laws of either state is not greatly in excess of the rate permitted by the other state. Depending upon the point of view as to the relative importance of the various acts or contacts involved, and as to the interpretation of the evidence, either Minnesota or Nebraska might be found to have the most significant relationship to the transaction and the parties. The rule adopted here applies if the rate of interest charged under the margin contract involved was permissible in either Minnesota or Nebraska. It was permissible in Minnesota and the District Court held that the law of Minnesota applied. The result reached by the District Court was correct.

The judgment is affirmed.

AFFIRMED.