AL BISHOP AGENCY, INC., Plaintiff,

v.

LITHONIA–DIVISION OF NATIONAL SERVICE INDUSTRIES, INC., Defendants.

No. 79–C–404.

United States District Court, E. D. Wisconsin.

July 27, 1979.

John S. Skilton, Foley & Lardner, Milwaukee, Wis., for plaintiff.

Rickard T. O'Neil, Michael, Best & Friedrich, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

There is currently pending in this civil action plaintiff's motion for a preliminary injunction enjoining defendant from terminating plaintiff as defendant's agent. A hearing was held on July 19, 1979, at which time the parties elicited testimony from witnesses and read portions of depositions. Since the Court had the benefit of briefs, the parties waived oral argument. Subsequent to the hearing, defendant submitted designations of certain depositions and plaintiff submitted counterdesignations. Having read the partys' legal memorandum, heard the testimony, and read the deposition designations and counterdesignations, the Court is prepared to rule on plaintiff's motion. The following memorandum will constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

The Court would note that defendant has stipulated to an extension of plaintiff's agency until July 27, 1979.

A preliminary injunction is an extraordinary remedy which a court should not issue unless the plaintiff carries its burden of persuasion as to all of the four prerequisites. These prerequisites are: (1) the plaintiff has no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the threatened injury to the plaintiff outweighs the threatened injury the injunction may inflict on the defendant; (3) the plaintiff has at least a reasonable likelihood of success on the merits; and (4) the granting of a preliminary injunction will not disserve the public interest. *Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Products*, 545 F.2d 1096 (7th Cir. 1976).

In reviewing and applying the four requirements that must be met for a preliminary injunction to be granted, the Court would opine that the one which requires the lengthiest analysis is likelihood of success on the merits. Therefore, this prerequisite will be considered first.

### Likelihood of Success on the Merits

By this action, plaintiff seeks to enjoin defendant from terminating its agency in violation of Chapter 135 of the Wisconsin Statutes. Under Wis.Stat. § 135.03:

No grantor, directly or through any officer, agent or employe, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor.

"Good cause" as defined in Wis.Stat. § 135.02 means:

(a) Failure by a dealer to comply substantially with essential and reasonable requirements imposed upon him by the grantor, or sought to be imposed by the grantor, which requirements are not discriminatory as compared with requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement; or

(b) Bad faith by the dealer in carrying out the terms of the dealership.

In terminating a dealership, the grantor must follow the procedures set forth in Wis.Stat. § 135.04, which provides:

Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy. If the reason for termination, cancellation, nonrenewal or substantial change in competitive circumstances is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and shall have 10 days in which to remedy such default from the date of delivery or posting of such notice.

There are three issues presently involved in this litigation. First, the Court must determine whether plaintiff owns a dealership within the meaning of Chapter 135 of the Wisconsin Statutes. Second, if it is found that plaintiff is a dealer, then the Court must determine: (a) whether defendant had good cause to terminate plaintiff; and (b) whether the notice of termination sent by defendant met the requirements of Wis.Stat. § 135.04.

A dealer is defined in the statute as "a person who is a grantee of a dealership situated in this state." Wis.Stat. § 135.02(5). A "dealership" as defined by Wis. Stat. § 135.02(2):

[M]eans a contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons, by

which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

Relying upon several unreported Wisconsin Circuit Court cases and one unreported case decided by Judge Reynolds of this district, defendant argues that plaintiff is not a dealer within the meaning of chapter 135. Plaintiff argues that these cases are distinguishable from the present case, and furthermore, that plaintiff is a dealer within the meaning of the statute.

Defendant relies, albeit lightly, upon *State Wide Lighting, Inc. v. Globe Illumination Co.*, Case No. 77–C–716 (E.D.Wis. 5/16/79) wherein Judge Reynolds questioned, without ruling, whether a manufacturer's representative is covered by chapter 135. This question is seemingly answered by Circuit Judge Max Raskin who held in *Foerster, Inc. v. Atlas Metal Parts Company*, No. 40217 (Circuit Court Waukesha County, Wis. 12/6/78) that a manufacturer's representative is not a dealership within the meaning of the statute. In explaining his ruling, Judge Raskin stated in part:

The definition of "dealership" in Chapter 135, supra, is quite broad and would certainly govern any standard dealership agreement. The agreement before the court, however, is in no way what is commonly understood to be dealership. Plaintiff was hired as a manufacturer's representative whose sole duty was to solicit new accounts for the defendant, on a commission basis. They were not empowered to set or adjust prices nor to arrange sales with current customers. Prior to the time of quoting, plaintiff was required to obtain consent from the defendant and before any offering. While there certainly was a "community of interest in the business of offering, selling, or distributing goods or services at wholesale, retail, by lease, agreement or otherwise," between the parties, plaintiff was

not granted an exclusive right to "sell or distribute goods or services, or use a trade name, trademark, service mark, logo type, advertising or other commercial symbol." The "Sales Agreement" as written appears to put plaintiff more in the position of a commissioned salesman than a "dealer" under Chapter 135.

The testimony elicited in Court indicates that plaintiff performed more functions for defendant than Foerster, Inc. performed for its grantor.

The evidence presented indicates that plaintiff performs the functions of a manufacturer's representative, *i. e.* by encouraging architects and engineers to specify defendant's products. However, plaintiff's responsibilities go far beyond such mere representation. Plaintiff, although it does not bill customers or sell from stock, arranges sales and solicits business from builders and contractors.

■ In determining whether plaintiff is something more than a manufacturer's representative, it is important that plaintiff was instrumental in the actual sale of defendant's products. In *Samco, Inc. v. Keystone Lighting Corp.*, Case No. C–137–562 (Wisconsin County Court, Milwaukee County, April 3, 1978), Judge Laurence C. Gram, Jr., after carefully and exhaustively interpreting the definition of dealership under Wis.Stat. § 135.02(2), held that a manufacturer's representative, who merely encourages engineers and architects to specify the grantor's products, was not a dealership. The court stated:

There is no question that this process ultimately produces sales, but this Court has great difficulty accepting the idea that this activity is the solicitation of offers to buy. Rather, it seems to be more of an activity of simple promotion of the defendant's products.

Apparently Judge Gram's reasoning is based in part upon an amendment to chapter 135, namely Wis.Stat. § 135.07(2), wherein the legislature excluded the insurance business from the statute. In his opinion, Judge Gram took judicial notice that

"insurance contracts are almost exclusively sold through the solicitation of offers to purchase and that final acceptance comes from the insurance company at a later date." He then held that the legislature's exclusion of insurance business from the coverage of chapter 135 evidenced that the legislature interpreted the "business of soliciting offers to be within the scope of a dealership as defined in Chapter 135."

After reviewing the cases submitted by defendant and the broad language of Wis. Stat. § 135.02(2), the Court is drawn to the conclusion that plaintiff is a dealership as defined in section 135.02(2). First, as indicated earlier, plaintiff does more than just represent defendant's products, it is instead involved in the actual solicitation of offers to purchase. While the evidence shows that plaintiff neither bills customers nor otherwise handles the products sold, these services generally being handled by a distributor, it is clear that plaintiff is involved in the solicitation of actual sales on a one-to-one basis. Second, plaintiff's business is closely entwined with that of defendant. Once the sales are made, plaintiff performs customer service functions by making certain the eventual purchaser is satisfied. Furthermore, plaintiff holds itself out as an agent for defendant by having defendant's name on its business cards and by being well-known as an agent for defendant.

█ Taking the relationship between plaintiff and defendant and the extensive functions performed by plaintiff into consideration, this Court is of the opinion that plaintiff is a dealer within the meaning of chapter 135. Such a finding is consistent with the broad language of Wis.Stat. § 135.02(2). Having found that plaintiff is a dealership within the meaning of the Wisconsin Fair Dealership Law, the Court must next determine whether defendant had good cause to cancel plaintiff and whether the notice was adequate.

The issues of good cause and proper notice are necessarily interlaced because of the factual situation involved. In a letter dated March 7, 1979 (plaintiff's exhibit 6), defendant's vice president, Marc J. Conway, sent a 90-day notice of plaintiff's termination. Two reasons for termination were given: (1) poor performance in attaining certain sales goals established by defendant; and (2) defendant's lack of security based upon the facts that plaintiff's accountant recommended that plaintiff drop defendant's line and plaintiff's own threat that it would drop defendant if defendant continued to pressure plaintiff to hire additional sales manpower. As required by Wis.Stat. § 135.04, Mr. Conway advised plaintiff that it had 60 days to improve its deficiencies. In order to improve its deficiencies, defendant required plaintiff to improve its market penetration and to meet "a prorated performance measurement including the current three (3) month period (February, March, April) compared with quarterly goals and achievement thereof."

Notwithstanding the espoused deficiencies in plaintiff's relationship and performance, there were two problems apparently underlying defendant's desire to cancel plaintiff. First and foremost, in being dissatisfied with plaintiff's performance, defendant was particularly concerned with plaintiff's poor market penetration in sales of fluorescent lighting. As a second and related problem, defendant was dissatisfied with plaintiff's failure to hire an additional salesman because the larger sales force would permit plaintiff to increase its sales of defendant's products including fluorescent lighting.

There are two principal product lines manufactured by defendant which plaintiff sells. First, defendant produces fluorescent lighting in its Lithonia division. There is no question that the fluorescent lighting manufactured by defendant was not as efficient as some manufactured by others because it produced less light for the amount of energy used. Efficiency is currently very important in the Wisconsin market for lighting due to a state code limiting the number of watts of electricity that can be used per square foot in lighting buildings. Although plaintiff had some problem competing with more efficient fluorescent type lighting such as the parabolume manufac-

tured by Columbia Lighting, Inc., Mr. Al Bishop testified in his deposition that this area was no worse than average. Mr. Gregg Kornacki, an electrical conservation engineer, testified that the fluorescents manufactured by Lithonia were undesirable to him as a lighting consultant because of high energy consumption as compared to light produced.

After listening to the testimony, the Court can appreciate why plaintiff has some difficulty selling the Lithonia fluorescent lighting. In fairness to defendant, however, it must be noted that to defendant the most important line produced is the fluorescent. Defendant was clearly justified in desiring plaintiff to produce up to a reasonable potential in an area, by Mr. Bishop's own admission, where the potential for fluorescent sales was no worse than the national average.

The second of defendant's major lines represented by plaintiff were the high intensity discharge lamps manufactured by defendant's Hi-tek division and labelled Hi-tek by defendant. Although the March 7, 1979 termination letter indicates that plaintiff's sales of Hi-tek were lower than desired by defendant, the evidence now available to the Court indicates otherwise. Apparently, plaintiff is one of the better and at times was the best Hi-tek seller among the agencies representing defendant's product line. The success enjoyed by plaintiff in selling Hi-tek was due in part to the high efficiency of the product and due in part to the fact that there is a high demand for high intensity discharge lamps in industrial areas such as Milwaukee where plaintiff represents defendant's products. An additional factor that probably motivated plaintiff to sell Hi-tek was that plaintiff received 7.7 percent commission for selling those products versus a 4.8 percent commission for the sales of Lithonia's fluorescent products.

■ In moving for a preliminary injunction, plaintiff argues that defendant did not have "good cause" to terminate plaintiff and that the notice of termination was wholly inadequate and unreasonable. The termination letter clearly does not articulate all of the reasons defendant used in making its decision to terminate plaintiff[1] and, furthermore, the Court would note that the letter perhaps could have been worded more clearly. Such defects in the termination letter, however, should not of themselves make the notice defective under chapter 135. Instead, the Court will examine the grounds for termination and the notice itself to determine whether defendant complied with the requirements of chapter 135.

■ As provided in Wis.Stat. § 135.03, a grantor needs good cause to terminate a dealership. The definition of "Good Cause" which is contained in Wis.Stat. § 135.02(6), and which was set forth in full earlier, consists of two elements. First, a dealer can be terminated for "failure to comply substantially with essential and reasonable requirements imposed upon him by the grantor," but, second, the requirements cannot be discriminatory when "compared with [those] imposed on other similarly situated dealers . . . ."

With respect to the requirements imposed upon plaintiff, and looking at the underlying reasons, the Court must find that the requirements were both essential and reasonable. In terms of sales penetration of fluorescent lighting, the defendant sets goals which an agent is expected to meet. Sales penetration is based upon the number of square feet of building construction taking place in the sales area, as determined by the F.W. Dodge Co., and the target figure developed by defendant's employees which represents the dollar volume of sales of a particular line of defendant's products that can be expected per 1,000 square feet of building construction. Either as combined or taking Hi-tek alone, plaintiff's sales of defendant's products were generally above the company average. For fluorescent,

---

1. One unarticulated problem was Mr. Al Bishop having taken a vacation without telling his employees where he was going. In listening to the testimony, the Court doubts that this was a serious motivating factor in defendant's decision to terminate plaintiff.

however, plaintiff's sales penetration of $78.47 was below the company average of $105.64 and was even further below the goal established for plaintiff by defendant. To the Court there is no question but that defendant was justified in requiring adequate sales of fluorescent lighting and that plaintiff failed to meet the goals. Furthermore, the Court finds that the goal was reasonable, and when one looks at other dealers, the requirement of meeting fluorescent goals did not constitute discrimination.

Mr. Charles R. Bryant, one of defendant's vice presidents, testified that sales goals were imposed on agents similarly situated to plaintiff. When the agencies consistently failed to meet sales goals or did not take measures to improve sales, then these agencies were terminated. In explaining why some of the poorly performing agencies listed on plaintiff's exhibit 7 were not terminated, Mr. Bryant testified that these agencies had taken steps to rectify their problems. Based upon this and the other evidence heard, the Court must find the imposition of sales penetration goals with respect to fluorescent lighting nondiscriminatory.

In reviewing the reasons given for termination, the Court would note that defendant's feelings of insecurity cannot form a good cause basis for termination because such feelings are subjective. If a grantor could terminate a dealer on the basis of insecurity, then anytime a grantor wanted to terminate, he could claim insecurity. Such a result would totally negate the prophylactic effect of chapter 135. In the Court's opinion, defendant's feelings of insecurity are not good cause.

The failure of plaintiff to hire an additional salesman is also not good cause. Of course, in a certain sense, defendant was justified in requesting plaintiff to hire an additional salesperson. Plaintiff was not meeting the flourescent sales penetration goals set by defendant and defendant perceived that the larger sales force would enable plaintiff to do so. However, it is clear that defendant's actual problem with plaintiff was plaintiff's failure to sell a sufficient amount of fluorescent lighting, which the Court has already determined was "good cause" for termination.

■ Having found that defendant had "good cause" to terminate plaintiff, the Court must next determine whether the notice of termination met the notice and cure requirements of Wis.Stat. § 135.04. First, as to the notice requirements, the March 7, 1979 letter was clearly adequate. Plaintiff was given 90-days notice of the termination, and plaintiff was granted the requisite 60 days in which to cure certain deficiencies. In a technical sense, then, the notice of termination was clearly sufficient. However, the notice was wholly inadequate in a practical sense, and furthermore, the actions of defendant were unreasonable because defendant failed to keep track of plaintiff's sales activity subsequent to the notice of termination.

As interpreted by both defendant and plaintiff, to cure the sales penetration deficiency plaintiff was required by the notice to bring his whole year's sales up to the company average in only 60 days. Per se, this was a difficult enough task, but in light of the practicalities of defendant's business, this task was impossible because of the time required for defendant to process orders and because of the time at which an agent is credited with an order. The evidence indicates that the normal time between when an order is placed and when it is released, the release date being the time at which plaintiff receives credit for the order, is six weeks. Indeed, it was impossible for plaintiff to ever have complied with the cure requirements.

Even if plaintiff had complied, defendant would not have been aware that plaintiff had cured the sales penetration problem because defendant was not monitoring plaintiff's performance. The Court recognizes, however, that it was unlikely that plaintiff could have cured the performance problem, particularly since several days after the termination notice plaintiff fired one of its two salesmen. Notwithstanding the unlikelihood of plaintiff's compliance,

however, the lack of defendant's diligence indicates defendant's bad faith in the provisions for cure.

■ In a literal sense, Wis.Stat. § 135.04 does not require that the means for rectification be reasonable. However, in examining the entire Wisconsin Fair Dealership statute, particularly the "good cause" requirement contained in Wis.Stat. § 135.03 and the definition of "good cause" provided in Wis.Stat. § 135.02(6), it becomes apparent that the steps that a grantor requires a dealer to take in order to rectify a deficiency must be reasonable. As indicated earlier, the steps that plaintiff was required to take to rectify the deficiency were impossible for plaintiff to meet and thus were unreasonable. Therefore, because the evidence now indicates that it is likely that the cure requirements were defective, the notice was inadequate and consequently defendant's termination of plaintiff was in violation of the Wisconsin Fair Dealership Law and plaintiff has shown that it is likely that it is entitled to permanent injunctive relief.

Having found that plaintiff has shown a substantial likelihood of success on the merits, the Court must determine whether plaintiff has shown that the other three requirements for a preliminary injunction have been met.

### Preliminary Injunction Will Not Disserve the Public Interest

■ The public interest is represented by the statute itself. In passing the Wisconsin Fair Dealership Law, the Wisconsin Legislature apparently determined that willy nilly terminations of dealerships disserved the public interest and that it served the public interest to permit termination only upon a showing of good cause. This Court will not question the validity of the legislature's findings and thus will find that the public interest will not be disserved by the issuance of a preliminary injunction.

### Adequacy of Legal Remedy and Irreparable Harm

■ Under Wis.Stat. § 135.065 for purposes of preliminary injunctions a violation of chapter 135 is presumed to result in irreparable injury. Defendant, citing *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) and *Kaiser Trading Co. v. Associated Metals & Minerals Corp.*, 321 F.Supp. 923 (N.D.Cal.1970), argues that a federal court cannot rely upon the finding of irreparable harm in a state statute, but must instead determine whether under federal law the court should exercise its discretion and grant preliminary injunctive relief.

■ Aside from the statute, this Court would opine that plaintiff will be irreparably harmed by the determination. First, the evidence shows that, due to plaintiff's long reputation as defendant's agent and because of market conditions, it is unlikely that plaintiff can replace defendant. Plaintiff's business will be substantially harmed if not destroyed by the loss of its relationship with defendant. Second, the reduction of business perhaps can be compensated by money, but the destruction of a business, which appears quite possible, in the Court's opinion, cannot be compensated with money.

Based upon Wis.Stat. § 135.065, which, contrary to defendant's argument, this Court finds applicable, and an independent finding of irreparable harm and inadequacy of the legal remedy of damages, the Court must find the requisite irreparable harm. This leaves one final requirement to be considered; whether the balance of the harms favors plaintiff.

### Balance of the Harms

The harm to plaintiff by being terminated clearly outweighs any harm to defendant. Sixty percent of plaintiff's income derives from the sales of defendant's products. If plaintiff is terminated its business may be destroyed or substantially harmed. If plaintiff is not terminated, the only harm to defendant will be the possible loss of some sales due to plaintiff's poor performance. In the Court's opinion, the harm to plaintiff outweighs the potential harm to defendant.

*Remedy*

The Court will grant plaintiff's motion for a preliminary injunction. Defendant is enjoined from terminating plaintiff until February 5, 1980 at 5:00 P.M. Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, plaintiff is ordered to post security with the Clerk of Courts in the sum of $25,000.00.

In granting the preliminary injunction, the Court recognizes that the only likely violation of chapter 135 was the imposition by defendant of unreasonable steps for plaintiff to take to cure the perceived deficiencies. To the Court, it does not seem reasonable, however, that defendant be forced to work with an agent with which it is dissatisfied on a "good cause" basis for an indeterminate length of time. Hence, the Court has set a time limit on the preliminary injunction.

Although Wis.Stat. § 135.04 only requires a grantor to give a dealer 60 days to take steps to cure deficiencies, since defendant has been found to have violated the statute by imposing unreasonable steps, the Court will exercise its inherent equitable powers to give plaintiff a longer period in which to cure its deficiencies. The Court feels that a longer period is warranted due to the disruption to plaintiff's business that has occurred during the pendency of this suit.

On Monday, February 5, 1980, at 10:00 A.M., a hearing will be held during which the Court will determine whether plaintiff has made a good faith and substantially adequate attempt to meet the sales penetration goals imposed by defendant. During the interim between the date of this order and February 5, 1980, plaintiff is to continue to act as defendant's agent for the area it now covers. Based upon the F.W. Dodge Co. construction studies, defendant is to continue preparing penetration goals for the sales of its products in the area covered by plaintiff.

On February 5, 1980, plaintiff will be required to show that it has substantially met or actually exceeded defendant's sales goals during the period July 27, 1979 to February 5, 1980 for fluorescent lighting and, of course, Hi-tek, or at least that it has substantially met or exceeded a reasonable sales goal for its sales area. In effect, this Court is giving plaintiff another chance to adequately perform as defendant's agent for the area currently assigned to plaintiff.

In light of the foregoing, defendant is hereby preliminarily enjoined from terminating plaintiff as an agent or in any way altering their relationship. This preliminary injunction will expire on Monday, February 5, 1980 at 5:00 P.M. unless extended by the Court.

SO ORDERED this 27th day of July, 1979, at Milwaukee, Wisconsin.