**MODERN COMPUTER SYSTEMS, INC., Appellant,**

v.

**MODERN BANKING SYSTEMS, INC.; Modern Banking Systems of Southern Wisconsin, Appellees.**

No. 88–1393.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1988.

Decided Oct. 14, 1988.

Rehearing En Banc Granted and Opinion Vacated Nov. 17, 1988.

Jeffrey J. Keyes, Minneapolis, Minn., for appellant.

James P. Fitzgerald, Omaha, Neb., for appellees.

Before HEANEY and MAGILL, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Plaintiff Modern Computer Systems, Inc., appeals from the district court's decision denying its motion for a preliminary injunction. Claiming violations of the Minnesota Franchise Act, Modern Computer sought to enjoin defendant Modern Banking Systems, Inc., from terminating it as a distributor and from selling or marketing Modern Banking's computer software in plaintiff's exclusive territory. The district court held the Minnesota Franchise Act did not apply because the distributorship agreement between the parties contained a choice of law provision which stated that Nebraska law should govern any disputes between them. Based in part upon its determination that the Franchise Act did not apply, the court concluded that Modern Computer had failed to show the irreparable injury necessary to justify injunctive relief.

We reverse. We find the Minnesota Franchise Act should be applied under the circumstances of this case and that Modern Computer has shown a likelihood of success on the merits of its claims under the Act. Because injunctive relief is the only remedy available for violations of the Minnesota law, plaintiff's remedy will largely be meaningless if preliminary relief is denied. Accordingly, we find plaintiff has shown the requisite injury to support the issuance of a preliminary injunction, and we remand to the district court for further proceedings consistent with this opinion.

## I.

Plaintiff Modern Computer Systems, Inc., entered into a distributorship agreement with defendant Modern Banking Systems, Inc., in October, 1980. At the time, plaintiff was a two-person start-up company. The agreement was a form contract presented by Modern Banking, the substantive terms of which were non-negotiable. The agreement gave plaintiff the right to distribute Modern Banking's turn-key data processing computer systems, which included both hardware purchased from Texas Instruments and software developed by Modern Banking for use by commercial banks.[1]

From 1981 through 1987, plaintiff purchased $3,614,739.41 worth of hardware and software from defendant, and built up a customer base of 86 financial institutions. Plaintiff currently employs 25 people in Minnesota and has been endorsed by the Independent Bankers Association of Minnesota. Approximately 72.5% of plaintiff's business arises from the sale and maintenance of Modern Banking's software packages, the sale and maintenance of computer hardware, and the sale of supplies to banking customers utilizing Modern Banking's system.

Plaintiff began distributing Modern Banking's systems in the state of Minnesota, and was required to sell at least five computer systems, with application software, during each year. The distributorship agreement gave plaintiff the right of first refusal for the open territories adjoining Minnesota as well, and in 1981 and 1982 the states of North and South Dakota were

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. Both plaintiff and defendant are Texas Instruments distributors. Although plaintiff could obtain the base computer system manufactured by Texas Instruments from Texas Instruments directly at a lesser cost, plaintiff has purchased the base system from defendant in order to obtain defendant's software. Plaintiff purchased ancillary hardware from Texas Instruments directly.

included within plaintiff's territory.[2]

Plaintiff also sought to take over the Wisconsin territory when it became available in 1983, but defendant took the position that plaintiff's right of first refusal did not extend to Wisconsin, since Wisconsin was not "open" at the time the distributor agreement was signed. Plaintiff sought again to enter Wisconsin in 1986, through an assignment of rights under a settlement agreement between defendant and its Wisconsin distributor. Defendant again blocked this move, threatening to sue and to enter Minnesota to compete directly with plaintiff if plaintiff attempted to service any Wisconsin customers.

In 1986, defendant sought to convert its distributors to licensees, and all distributors except plaintiff agreed to enter into a new license agreement. Since this time, defendant has revised its pricing, and has charged plaintiff, as a distributor, more for copyrighted software than it charges its licensees.

## II.

On August 4, 1987, plaintiff filed suit in Minnesota state court seeking a declaration of rights under the distributorship agreement, including specifically (1) whether plaintiff could service existing Wisconsin bank customers, (2) whether defendant could require plaintiff to purchase Texas Instruments hardware from defendant, (3) whether defendant could tie the sale of hardware to the sale of software, and (4) whether defendant could charge its distributors more than its licensees.

On October 19, 1987, the Minnesota court exercised its discretion to dismiss the suit, holding the parties had agreed that venue for any disputes between them would lie exclusively in Douglas County, Nebraska. That same month, defendant filed suit against plaintiff in Nebraska state court, alleging Modern Computer had breached the distributorship agreement by installing Modern Banking's software without pay-

ing, by failing to complete the proper paperwork, and by installing hardware not purchased from Modern Banking.[3]

In November, Modern Banking twice refused to accept plaintiff's $1,000 check for renewal of its distributorship, and in early December, it returned an order from plaintiff, stating flatly that Modern Computer was no longer a Modern Banking distributor.

Modern Computer then filed the present action in the United States District Court for the District of Nebraska, alleging interference with prospective contractual relations, defamation, breach of contract, promissory estoppel, antitrust violations, unfair competition, and violations of the Minnesota Franchise Act and the Wisconsin Fair Dealership law. Plaintiff sought a preliminary injunction, and evidence in the form of affidavits was submitted by both parties. The district court denied plaintiff's request for preservation of the status quo until the merits of the parties' claims could be fully litigated, and this appeal followed.

## III.

Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant, (2) the state of the balance between this harm and the injury that granting the injunction will inflict on the other parties litigant, (3) the probability the movant will succeed on the merits, and (4) the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). No single factor is dispositive; in each case all factors must be considered to determine whether on balance they weigh towards granting the injunction. *Id.* at 113.

Plaintiff bears the burden of proving that a preliminary injunction should be granted, *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987), and

---

**2.** In 1984, South Dakota was withdrawn as part of Modern Computer's territory because of Modern Computer's failure to meet the performance criteria for that state.

**3.** Modern Computer subsequently removed this action to federal court.

we may reverse the district court's denial of relief only if the court abused its discretion or based its decision on an erroneous legal premise. *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.,* 815 F.2d 500, 503 (8th Cir.1987); *West Publishing Co. v. Mead Data Central, Inc.,* 799 F.2d 1219, 1222–23 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed. 2d 1010 (1987); *Randall v. Wyrick,* 642 F.2d 304, 308 (8th Cir.1981).

The district court in this case based its denial of preliminary relief primarily on plaintiff's failure to show irreparable harm. Plaintiff challenges the court's conclusion, arguing that the protections it is entitled to as a Minnesota franchise under the Minnesota Franchise Act are rendered meaningless and its legal remedy rendered inadequate by the court's denial of preliminary relief. The district court held the Minnesota Act inapplicable, and hence did not consider its impact in deciding plaintiff's motion.

While the propriety of granting injunctive relief is a question of federal law, the right plaintiff claims is state-created. We must, therefore, first address the district court's conclusion that Nebraska, rather than Minnesota, law controls the substantive issues in the case. *See System Operations, Inc. v. Scientific Games Development Corp.,* 555 F.2d 1131, 1141 (3d Cir. 1977).

In deciding conflict of laws questions such as this, a federal district court sitting in Nebraska must follow Nebraska's conflict of laws rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 477 (1941); *Birdsell v. Holiday Inns,* 852 F.2d 1078, 1079 (8th Cir.1988). The district court determined that Nebraska follows

the Restatement (Second) of Conflict of Laws, and noted that Nebraska had honored choice of law provisions in past cases. *See Shull v. Dain, Kalman & Quail, Inc.,* 201 Neb. 260, 267 N.W.2d 517, 520 (1978); *Exchange Bank & Trust Co. v. Tamerius,* 200 Neb. 807, 265 N.W.2d 847, 850 (1978).

The choice of law provision in the distributorship agreement signed by the plaintiff states: "this Agreement shall be governed by the laws of the State of Nebraska." Section 187 of the Restatement provides that the law of the state chosen by the parties will be applied unless to do so "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188,[4] would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187(2)(b) (1971). Comment g reflects the rationale of this rule: "Fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation."

Both Nebraska and Minnesota have an interest in the construction and performance of the distributorship agreement in this case, but we believe Minnesota has the most significant relationship under the Restatement criteria.[5] Nebraska's primary contact is that defendant is located there. Although plaintiff has traveled to Nebraska on several occasions, the agreement was negotiated in telephone conversations between the parties in both Nebraska and Minnesota. Minnesota is the place of performance of the contract, as well as the place of incorporation of the plaintiff. Defendant delivers its products to Minnesota

---

4. In the absence of an effective choice of law by the parties, § 188 provides the governing law shall be that of the state which has the most significant relationship to the transaction and the parties, taking into consideration

 (a) the place of contracting,
 (b) the place of negotiation of the contract,
 (c) the place of performance,
 (d) the location of the subject matter of the contract, and

 (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
Restatement (Second) of Conflict of Laws § 188(2) (1971).

5. Although other states, i.e., Wisconsin and North Dakota, may have some interest in portions of the dispute, for purposes of preliminary relief in this case the issue is whether Minnesota or Nebraska substantive law should be applied.

and enters into contractual arrangements in Minnesota with Minnesota customers for use of its software packages. Plainly, Minnesota would be the state of the applicable law in the absence of an effective choice by the parties.

■ Nonetheless, the distributorship agreement states Nebraska law should apply, and under the Restatement, this choice must be honored unless application of Nebraska law would be contrary to a fundamental policy of Minnesota. The Attorney General of Minnesota, as amicus, urges just such a result, arguing application of Nebraska law would deprive plaintiff, a Minnesota corporation, of the protections of the Minnesota Franchise Act, Minn.Stat. Ch. 80C (1986 and Supp.1987).

Chapter 80C was adopted in 1973 as remedial legislation designed to protect franchisees within Minnesota from unfair contracts and other previously unregulated abuses in a growing national franchise industry. *Clapp v. Peterson,* 327 N.W.2d 585, 586 (Minn.1982); *Martin Investors, Inc. v. Vander Bie,* 269 N.W.2d 868, 872 (Minn.1978). It extends protection to all "franchises" within the state if (1) the franchisee has a right to use the franchiser's trade name or commercial symbol, (2) the franchisee shares a "community of interest" with the franchiser in the marketing of goods or services, and (3) the franchisee is required to pay a franchise fee. Minn. Stat. § 80C.01(4). *See RJM Sales & Marketing, Inc. v. Banfi Products Corp.,* 546 F.Supp. 1368, 1373 (D.Minn.1982); *Chase Manhattan Bank v. Clusiau Sales & Rental, Inc.,* 308 N.W.2d 490, 492 (Minn. 1981); *Martin Investors,* 269 N.W.2d at 874 n. 6.[6]

The Act requires a registration statement to be filed before any franchise can lawfully be offered or sold within the state, Minn.Stat. § 80C.02, as well as a public offering statement with certain disclosures about the franchiser and the proposed franchise relationship. *Id.* §§ 80C.04 and 80C.06. A franchise can only be terminated for "good cause" and franchisees must be given advance written notice and an opportunity to correct any deficiencies prior to termination. *Id.* § 80C.14(3). The sole remedy for commission of an "unfair or inequitable" practice with respect to termination of a franchise is injunctive relief. *Id.* § 80C.14(1); *Mason v. Farmers Insurance Cos.,* 281 N.W.2d 344, 348 (Minn. 1979).

In addition to the foregoing, the Act contains an anti-waiver provision which states:

> Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder is void.

Minn.Stat. § 80C.21.

Nebraska has a similar Franchise Practices Act, Neb.Rev.Stat. §§ 87–401 *et seq.* (1987), but its coverage extends only to franchisees within the state of Nebraska. *Id.* § 87–403(1). The Minnesota Attorney General argues application of Nebraska law would leave plaintiff without the remedies available under either state franchise act and would offend the fundamental public policies of Minnesota by negating the decision of the legislature to offer franchisees in Minnesota more protection than the traditional common law remedies, which had proven ineffective in regulating abuses in the franchise industry. *See* Note, *Regulation of Franchising,* 59 Minn. L.Rev. 1027, 1028–36 (1975). In addition, the Attorney General contends application of Nebraska law would vitiate the policy expressed in the anti-waiver provision of not permitting a franchiser to circumvent protections of the Act by imposing the choice of another state's law.

Defendant argues enforcement of the parties' agreement is consistent with the public policies of both Minnesota and Ne-

---

**6.** Because the district court found the Franchise Act inapplicable, it did not make any factual findings concerning whether plaintiff falls within the statutory definition of a "franchise." Plaintiff submitted evidence that it met all three criteria, and we assume for purposes of this decision that plaintiff is a "franchise." On remand, the district court shall make specific findings regarding this issue.

braska to enforce choice of law provisions. It suggests that as a national organization it has an interest in the application of a single body of law to all of its relationships with distributors.[7]

While as a general rule both Minnesota and Nebraska have evidenced a willingness to enforce parties' choice of law agreements, in the case of franchiser-franchisee relations, both states have expressed a contrary intent through the enactment of anti-waiver provisions. *See* Minn.Stat. § 80C.21 (1986); Neb.Rev.Stat. § 87–406(1) (1987). These provisions recognize the often superior bargaining power and economic resources of the franchiser, and seek to protect against the use of that power to avoid the law. *See Southern International Sales Co. v. Potter & Brumfield Division of AMF, Inc.*, 410 F.Supp. 1339, 1341–43 (S.D.N.Y.1976); *Business Incentives Co. v. Sony Corp.*, 397 F.Supp. 63, 66–67 (S.D.N.Y.1975); *Winer Motors, Inc. v. Jaguar Rover Triumph, Inc.*, 208 N.J.Super. 666, 506 A.2d 817, 820 (1986). Comment g of Restatement section 187(2) recognizes as "fundamental" a policy embodied in a statute designed to protect a person against the oppressive use of superior bargaining power, such as in the insurer-insured relationship. *See* Restatement (Second) of Conflict of Laws § 187(2), comment g (1971).

The distributorship agreement in this case is a form contract drafted by defendant Modern Banking and presented to plaintiff on a "take it or leave it" basis. At the time the parties entered into the agreement, plaintiff was a two-person start-up company which was unrepresented by legal counsel. No negotiation of the choice of law provision occurred.

Our Court has not hesitated to negate contractual choices regarding the litigation of disputes when to enforce the parties' agreement would be unfair and unreasonable. *Farmland Industries v. Frazier–Parrott Commodities, Inc.*, 806 F.2d 848, 851–52 (8th Cir.1986). We find such is the case here, and we hold, under the Restatement (Second) of Conflict of Laws § 187(2), that enforcement of the parties' choice of law provision would be contrary to fundamental public policy.[8]

IV.

The conclusion that Minnesota law applies does not, however, end the inquiry. We must now consider whether, under the *Dataphase* factors, the district court erred in denying plaintiff's request for preliminary relief preventing defendant from terminating plaintiff and from competing against it within its exclusive sales territory. The test, as we have stated, is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981).

Assuming application of the Minnesota Franchise Act,[9] plaintiff will very likely succeed in proving the Act has been violated. Defendant has not, at the very least, provided the written notice of termination required under the Act, *see* Minn. Stat. § 80C.14(3) (Supp.1987), nor has it complied with the contract notice and opportunity to cure provisions. *See Paul*

---

7. This latter argument loses some force since plaintiff apparently is defendant's only distributor. The record does not reflect whether defendant's agreements with its licensees contain similar choice of law provisions.

8. We recognize our decision takes a somewhat different position than the Sixth Circuit's decision in *Tele–Save Merchandising Co. v. Consumers Distributing Co.*, 814 F.2d 1120 (6th Cir. 1987). In *Tele–Save*, however, the court emphasized the contract at issue "was freely negotiated by aggressive and successful business executives" of equal bargaining strength, *id.* at 1123, which is not true in our case. Moreover, the

*Tele–Save* Court did not have the benefit of the state Attorney General's position that fundamental state policies were implicated, such as is the case here. Nonetheless, to the extent the *Tele–Save* majority finds no "fundamental" public policy thwarted by a choice of law provision which circumvents the protections of a statute similar to the Minnesota Franchise Act, we respectfully disagree, and find the dissent's analysis more persuasive in the context of this case. *See id.* at 1124–26.

9. *See* note 6 *supra*.

*Reilly Co. v. Dynaforce Corp.,* 449 F.Supp. 1033, 1036 (E.D.Wis.1978) (injunctive relief granted for failure to comply with notice provisions under Wisconsin Fair Dealership law). The public policies embodied in the Franchise Act and discussed above support the award of preliminary relief in this case. *See Culligan International Co. v. Culligan Water Conditioning,* 563 F.Supp. 1265, 1272 (D.Minn.1983); *Al Bishop Agency, Inc. v. Lithonia–Division of National Service Industries, Inc.,* 474 F.Supp. 828, 835 (E.D.Wis.1979).

 We also find the balance of hardships favors preservation of the status quo. The district court's finding that plaintiff suffered no threat of irreparable harm was based upon an erroneous legal premise, namely, that Nebraska law applied. "[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.1987) (citing *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974)).

Under the Minnesota Franchise Act, injunctive relief is plaintiff's sole remedy for wrongful termination. *See* Minn.Stat. § 80C.14(1) (Supp.1987). Unless preliminary relief is granted, plaintiff's remedy will largely be meaningless. *See Janmort Leasing, Inc. v. Econo–Car International, Inc.,* 475 F.Supp. 1282, 1294 (E.D.N.Y.1979) (granting preliminary relief where ultimate remedy may otherwise be futile). While plaintiff has alleged other common law and antitrust violations, and may recover damages for these claims, the Franchise Act was enacted because of the inadequacy of these alternatives in the unique circumstances of franchise relationships. *See* Note, 59 Minn.L.Rev. at 1028–36. The lack of an adequate legal remedy provides a basis for granting injunctive relief. *See Collins & Co. v. Claytor,* 476 F.Supp. 407, 410 (N.D.Ga.1979) (preliminary relief granted where damage remedy did not fully compensate plaintiff).

In addition, a substantial portion of plaintiff's business is derived from its relationship with defendant, and plaintiff alleges its termination will result not only in loss of sales but also loss of goodwill. Approximately 72.5% of Modern Computer's business involves the sale and maintenance of Modern Banking's software, the sale and maintenance of hardware, and the sale of supplies to banking customers using Modern Banking's data processing system. While plaintiff would not be precluded from performing some of these services should it be terminated as a distributor, plaintiff would nonetheless lose a very significant percentage of its business, and an immeasurable amount of goodwill. *See Al Bishop Agency,* 474 F.Supp. at 835 (potential loss of 60% of plaintiff's business justified preliminary relief preventing dealership termination); *Paul Reilly Co.,* 449 F.Supp. at 1035 (potential loss of goodwill and confusion in marketplace constitute irreparable injury if dealership terminated); *Brennan Petroleum Products Co. v. Pasco Petroleum Co.,* 373 F.Supp. 1312, 1316–17 (D.Ariz.1974) (potential loss of goodwill and ability to compete effectively in marketplace justified preliminary relief).

The record shows plaintiff has successfully marketed defendant's turn-key systems in the past, and plaintiff has the same interest in successful performance today. Continuing with the distributorship relationship pending trial on the merits will thus result in far less harm to defendant than would result to plaintiff if the relationship were terminated. *See Menominee Rubber Co. v. Gould, Inc.,* 657 F.2d 164, 167 (7th Cir.1981); *Culligan International Co.,* 563 F.Supp. at 1272; *Paul Reilly Co.,* 449 F.Supp. at 1035. We thus find, on balance, that the *Dataphase* factors support issuance of an injunction in this case.

## V.

For all of the foregoing reasons, we reverse the judgment of the district court denying plaintiff's request for preliminary relief, and remand this case for further consideration. On remand, the district court shall make specific findings concerning the application of the Minnesota Franchise Act and, if plaintiff is found to meet the criteria for "franchise" under the Act,

shall issue an appropriate injunction pending trial on the merits.

MAGILL, Circuit Judge, dissenting.

Today the court concludes that the public policy of Minnesota overrides the choice of law provision agreed upon by the parties. Because I believe that the majority has underestimated both the bargaining power Modern Computer Systems, Inc. (MCS) had when it agreed to the terms of its franchising agreement with Modern Banking Systems, Inc. (MBS) and the applicability of *Tele–Save Merchandising Co. v. Consumers Distributing Co.*, 814 F.2d 1120 (6th Cir.1987), to this case, I respectfully dissent.

In *Tele–Save*, the Sixth Circuit upheld a choice of law provision in a supply agreement despite the existence of an Ohio statute that (like the Minnesota Franchise Act) includes a non-waiver provision. The court concluded that it was obligated to enforce the provision for the following reasons: the parties had agreed in advance to the law to be applied to future disputes; contacts between the parties were fairly evenly divided between the state chosen in the contract and the plaintiff's state; the parties were not of unequal bargaining strength; and the application of the law chosen in the contract was not repugnant to the public policy of the plaintiff's state. *Id.* at 1123. An analysis like that in *Tele–Save* should have been applied in this case and the same result should have been reached.

Neither party here denies that the franchise agreement (signed on October 22, 1980) calls for the application of Nebraska law in the event of a dispute. Paragraph 16 of the agreement plainly states that "[t]he parties agree that this agreement shall be governed by the laws of Nebraska." MBS is incorporated and has its principal place of business in Nebraska, the negotiation and signing of the agreement took place in Nebraska, and the choice of law provision calls for the use of Nebraska law, so I believe the majority's apparent conclusion that all of the most important contacts in this case are in Minnesota. is mistaken.

The majority is particularly unpersuasive in its conclusion that the parties possessed significantly disparate levels of bargaining power. In prior proceedings in this case, a Minnesota state court specifically found that at the time of their agreement, MCS and MBS were *not* of unequal bargaining power. *Modern Computer Systems v. Modern Banking Systems*, No. 104618, slip op., Dakota County, Minnesota, October 19, 1987 (unpublished memorandum opinion).[1] The court concluded that "[t]he contract is not adhesive. There is no evidence of a great disparity in bargaining power between the parties * * *." *Id.*

Although I recognize that the literature of franchising law is strewn with reports of sophisticated and financially powerful franchisors taking advantage of relatively inexperienced franchisees, I do not believe that the facts in this case fit that stereotype. This matter involves multi-million-dollar dealings between two computer companies in a market encompassing a tristate region. To give MCS the benefit of protection under the Minnesota Franchising Act after they knowingly waived that protection (it is significant to note that they did so without attempting to negotiate for more favorable choice of law terms) strikes me as unduly paternalistic. Some evidence of oppressive, unreasonable or unfair use of superior bargaining position, as in a contract of adhesion, is required before a court is justified in disregarding a mutually agreed upon choice of law provision. No such extreme circumstances exist in this case. Further, the majority seems to enunciate a standard-

---

**1.** Ordinarily, we do not cite unpublished opinions in this circuit. Eighth Circuit Local Rule 8(i) indicates that "[no] party may cite an opinion that was not intended for publication by this or any other federal or state court * * *." However, Rule 8(i) goes on to make an exception "when the cases are related by virtue of an identity between the parties or the causes of action." Since the parties and causes of action in the instant case are identical to those in the Dakota County District Court case, Rule 8(i) authorizes this citation. *See, e.g.,* Judge Arnold's majority opinion in *Jones v. Mabry*, 723 F.2d 590, 596 (1983) (there is no impropriety in the use of an unpublished opinion when causes of action are identical).

less *per se* rule of "unfairness" and "unreasonableness."

Lastly, I am unpersuaded by the argument that the public policy of Minnesota demands application of Minnesota law in this case. Granted, the Minnesota Franchise Act evinces a policy in favor of offering franchisees in Minnesota remedies greater than those available under traditional common law, but what of Minnesota's traditional willingness to enforce parties' choice of law agreements? *See Milliken and Co. v. Eagle Packaging Co.*, 295 N.W.2d 377 (1980) (enunciating the rule that when parties agree that the law of another state shall govern their agreement, Minnesota courts will interpret and apply the law of the state where such an agreement is made); *see also Combined Insurance Co. of America v. Bode*, 247 Minn. 458, 77 N.W.2d 533 (1956) (parties to a contract acting in good faith and without an intent to evade the law may agree that the law of the state in which the contract is made shall govern its interpretation); *see also OT Industries, Inc. v. OT–TEHDAS OY*, 346 N.W.2d 162 (1984) (Minnesota routinely permits parties to control choice of law by express contractual agreements).

To conclude, I believe that the majority has given MCS the benefit of statutory protection that is better reserved for cases involving extremely unfair dealings. In this case, a computer company simply struck a bargain that turned out badly; there is no evidence of unconscionable exploitation of superior bargaining power. Therefore, I believe Nebraska law should have been applied as per the agreed upon choice of law provision, and this court should have affirmed the district court's denial of injunctive relief because of MBS' failure to demonstrate irreparable injury.