Lynn **MOODIE**, Plaintiff,

v.

**SCHOOL BOOK FAIRS,
INC.**, Defendant.

No. 88–C–165.

United States District Court,
E.D. Wisconsin.

Sept. 16, 1988.

David A. Goluba, Ripon, Wis., for plaintiff.

Michael, Best & Friedrich by Andrew O. Riteris, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

After entering summary judgment in favor of the plaintiff on the issues of whether he was a dealer within the meaning of Wisconsin Fair Dealership Law and whether the defendant, School Book Fairs, violated the WFDL by failing to give Mr. Moodie 60 days in which to correct his deficiencies, the court held a trial on the issue of damages.

Mr. Moodie presented testimony by an economics expert that Mr. Moodie has lost over $200,000 in income. This projection is based on the assumption that Mr. Moodie would start his own business as a book seller and continue that profession for the next twenty years. Based on Mr. Moodie's own testimony regarding his past work experience and his physical condition, I am convinced that he would not be able to come up with the energy it would take successfully to market and deliver books for another twenty years.

A far more accurate and realistic measure of damages would consist of comparing the sales of other similar book distributorships in order to determine the fair market value of Mr. Moodie's business. Defendant's exhibit #8 sets forth the sale prices of three book distributorships; the figures range from $2,500 to $12,000. Based on the foregoing, School Book Fairs calculated the market value of Mr. Moodie's distributorship to be $6,536.00. While this appears to be a plausible measure of Mr. Moodie's damages, I find that there is an even more reliable means of computing the plaintiff's loss.

I believe that Mr. Moodie will be fairly compensated for the defendant's breach by awarding him $7,155 as damages, plus his costs and reasonable attorney's fees. I arrived at the figure in the following manner: First, I find that Mr. Moodie's employment would have lasted only 90 days beyond his actual date of termination. Mr. Moodie persisted in not signing the computer lease agreement. I am persuaded by Mr. Little's testimony that this adamant rejection of a company directive constituted good cause for termination. Stated another way, had School Book Fairs given Mr. Moodie all the notices required by the

WFDL, his last day with the company would have been February 5, 1988.

Assuming this termination date, I then calculated the number of book fairs scheduled through that date and multiplied that number by the average commission per book fair. Mr. Moodie testified that he had 51 fairs scheduled through December, 1987, and 121 fairs scheduled through June, 1988. Using a figure of 91 (51 plus ⅓ of the spring schedule or 40) as the number of book fairs scheduled through February 5, 1988, I multiplied that number by $140. I used $140 because Mr. Moodie testified that that number represented the high end of his average sales commission per school. 91 × 140 = $12,740.

I then subtracted $1,900 because that was the amount of money Mr. Moodie earned from November, 1987, through February, 1988. $12,740 − $1,900 = $10,840.

Since this is a before-tax figure, I then subtracted 34% of 10,840 from $10,840. $10,840 − $3,685 = $7,155.

Mr. Moodie will also be granted an award of attorney's fees. The WFDL provides that a dealer may recover "the actual costs of the action, including reasonable actual attorney's fees." Sec. 135.06, Wis. Stats.

THEREFORE IT IS ORDERED that judgment be and hereby is entered in favor of the plaintiff in the amount of $7,155, plus costs and attorneys fees.