721 F.Supp. 1082 (1989)
J.I. CASE COMPANY, et al., Plaintiffs,
v.
EARLY'S, INC., et al., Defendants.
No. N 88-0095 C.
United States District Court, E.D. Missouri, N.D.
October 11, 1989.
*1083 Robert M. Lucy, Gary S. Godwin, St. Louis, Mo., Michael A. Bowen, Maurice J. McSweeney, Brian W. McGrath, Milwaukee, Wis., for plaintiffs.
Larry S. Phillips, Edina, Mo., for defendants.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on the motion of plaintiffs/counterclaim defendants J.I. Case Company ("Case") and J.I. Case Credit Corporation ("Case Credit") for summary judgment on Counts I, II and III of defendants' counterclaim. On the basis of the briefs, exhibits, discovery responses and affidavits submitted by the parties, the Court finds the following undisputed facts.
Case, a full-line manufacturer of farm equipment, distributes its products through independent dealers. Case Credit, an affiliated company, is primarily engaged in the business of financing purchases of Case products by dealers and consumers. Defendants William and Linda Early operated a Case dealership in northeastern Missouri known as Early's, Inc. William and Linda Early and Early's, Inc. are all defendants in this action. The dealership agreement which is the subject of this dispute was executed by Case and Early's on June 4, 1986. Paragraph 10(A) of the agreement provides as follows:
This agreement may be terminated any any (sic) time for any reason upon thirty (30) days' written notice by Dealer to Company, or upon ninety (90) days' written notice by Company to Dealer....
In January 1985 Case advised its dealers that in order to remain dealers they would be required to purchase approved computer business systems by December 31, 1986 and to have the systems installed and in communication with the Case Communications Network ("CCN") by December 31, 1987. Case unequivocally informed each dealer that it intended to enforce the computer requirement and would terminate any dealer who failed to comply therewith. Exh. C to Krummel Affidavit. In addition, Case, by letter dated September 24, 1986, specifically reiterated the computer requirement to William and Linda Early. Nevertheless, as of December 31, 1987 Early's had not installed a business computer system capable of dealing with the CCN.
On March 2, 1988 Case notified William and Linda Early that their dealership would be terminated in ninety days due to Early's failure to install a business computer system capable of communicating with the CCN. Case granted Early's sixty days to cure the deficiency. Early's then purchased a personal computer but failed to purchase the software necessary to allow communication with the CCN. Although William and Linda Early testified on deposition that they knew that dealers were required to purchase and use the appropriate software to comply with the computer requirement, it is undisputed that Early's never owned or installed a system capable of communicating with the CCN.
On April 29, 1988 Richard J. Krummel, manager of Case's Planning and Systems Administration, informed Mr. Early that his purchase of a personal computer did not *1084 fulfill Case's computer requirements. On May 5, 1988 Mr. Krummel traveled to Missouri and met with Mr. Early at the Early's dealership to discuss Early's failure to comply with the computer requirement. Thereafter, on May 12, 1988, pursuant to the timetable set out in the March 2, 1988 letter Case terminated Early's dealership agreement.
When Case terminated the dealership agreement, Early's allegedly had an outstanding credit balance owing to Case and Case Credit. Case and Case Credit brought this suit to collect the sums owed by Early's. Early's, Inc. and William and Linda Early then filed a counterclaim alleging breach of contract, wrongful termination and violations of the Missouri Dealership Act, Mo.Rev.Stat. § 407.838, et seq. (1987).
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983); Vette Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 392 (8th Cir. 1986). However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2739 (1983).
The non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must set forth specific facts to show that "there is sufficient evidence favoring [it] for a jury to return a verdict for [it]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). As the Supreme Court recently observed, summary judgment is not "a disfavored procedural shortcut" but "an integral part of the Federal rules ... which are designed `to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 1). Indeed, and if appropriate, summary judgment serves "a salutary purpose in avoiding a useless, expensive and time consuming trial where there is no genuine, material fact issue to be tried." Lyons v. Board of Education of Charleston, 523 F.2d 340, 347 (8th Cir.1975).
In support of its motion for partial summary judgment, Case[1] raises the following arguments. With respect to the first counterclaim in which defendants allege that Case breached the dealership agreement by selling its goods to parties other than Early's, Inc. Case asserts that the agreement neither grants Early's, Inc. an exclusive right to distribute Case products in any area nor limits its right to sell its products to whomever it chooses. In addition, Case asserts that defendants' other breach of contract claims must be limited to incidents that occurred after November 22, 1983.
With respect to defendants' claim for termination of the dealership agreement in violation of the Missouri Dealership Act, Case argues that it is entitled to judgment as a matter of law because the Missouri statute postdates the execution of the dealership *1085 agreement and substantially alters the parties' existing contractual relationship in violation of article I, section 10 of the United States Constitution. Case argues in the alternative that even if the statute does not violate the contract clause, Case's conduct did not violate the statute because good cause existed to terminate Early's dealership. Case also seeks summary judgment on defendants' claim that Case forced Early's, Inc. to accept inventory it had not requested and thereby violated the Missouri Dealership Act. Case contends that it is entitled to judgment on this claim because retroactive application of the statute in this situation imposes ex post facto liability.
Finally, Case seeks dismissal of the counterclaims raised by William and Linda Early individually because they are not, as individuals, either parties to the dealership agreement or "farm equipment dealers" within the meaning of the Missouri Dealership Act.
With respect to defendants' claim that Case breached the dealership agreement by shipping parts and machinery directly to customers and competing businesses in the town where the Early's, Inc. dealership was located, the Court concludes that Case is entitled to judgment as a matter of law because no showing has been made that the conduct complained of breached the dealership agreement. In support of their assertion that the agreement grants Early's, Inc. an exclusive right to sell products in its trade area, defendants' refer to ¶ 2 and ¶ 22 of the dealership agreement. These paragraphs make no reference to exclusivity and ¶ 22 specifically reserves to Case the right to sell directly to certain other parties. Moreover, no other provision of the agreement grants Early's, Inc. an exclusive right to sell Case products in a particular region.
Therefore, the Court concludes that defendants have failed to come forth with any evidence to sustain recovery on this claim and Case is entitled to judgment as a matter of law with respect to the allegations raised in ¶¶ 17(D) and (E) of the first counterclaim. In addition, the Court concludes that the allegations raised in ¶¶ 17(A), (B) and (C) are barred by the Missouri five year statute of limitations to the extent that those claims relate to incidents which occurred prior to November 22, 1983.
With regard to defendant's counterclaim for termination of Early's dealership agreement in violation of Mo.Rev.Stat. § 407.840 (1987), the Court concludes that Case is also entitled to summary judgment on this claim, because defendants have not come forth with any evidence to show that the termination of the dealership was without good cause.
Assuming without deciding that the Missouri Dealership Act can be applied retroactively in this case, the Court concludes that defendants' failure to satisfy Case's computer installation requirement constituted good cause for termination. Section 407.840 defines "good cause" as the:
... failure by a farm equipment dealer to substantially comply with essential and reasonable requirements imposed upon the dealer by the dealership agreement if such requirements are not different from those requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement.
It is undisputed that Case uniformly imposed the computer requirement on all of its dealers and that defendants failed to comply with the requirement. Case asserts that the computer requirement was essential for efficient and effective communication between the dealers and the manufacturer and between the dealers themselves. Krummel Affidavit, ¶ 4. Defendants have offered no evidence to show that the requirement was nonessential or unreasonable. Three courts which have addressed this issue have held that a dealer's failure to satisfy a manufacturer's computer installation requirement constitutes good cause for termination. See Moodie v. School Book Fairs, Inc., 694 F.Supp. 1372 (E.D.Wis.1988); In the Matter of the Termination of the Franchise Agreement between Groseth Int'l, Inc. and Int'l Harvester, slip op. No. 86-380 (Cir.Ct.S.D. July *1086 10, 1987); Tappan Motors, Inc. v. Volvo of America, 85 A.D.2d 624, 444 N.Y.S.2d 938 (1981), aff'd, 64 N.Y.2d 1116, 490 N.Y.S.2d 168, 479 N.E.2d 804 (1985). For the foregoing reasons the Court concludes that failure to comply with a uniformly applied and reasonable computer installation requirement constitutes good cause for dealership termination.
In response to Case's assertion that its termination of the agreement was for good cause, defendants contend that Case terminated Early's for reasons other than its failure to comply with the computer requirement. Apart from their "belief" that Case had another reason for terminating the dealership, defendants have offered no evidence that the reason for termination was anything other than that stated and documented by Case. Moreover, because Case has established that failure to comply with the computer requirement constitutes good cause for termination, the presence of an additional reason for termination is immaterial even if that reason standing alone would not constitute good cause for termination. Al Bishop Agency, Inc. v. Lithonia-Division of Natural Science Indus., 474 F.Supp. 828 (E.D.Wis.1979). Thus, the Court concludes that defendants have not made a showing sufficient to support their claim that Case's termination of the dealership violated the Missouri Dealership Act.
Although the counterclaim as originally pled only alleges that Case violated the Missouri statute by terminating Early's dealership, defendants now assert that the termination also breached the dealership agreement. See Ans. and Counterclaim ¶¶ 20-24. However, at the deposition of William L. Early, counsel for the defendants stipulated that the written notice of termination conformed to the requirements of the dealership agreement and did not breach the agreement. (Dep. of W. Early at 64-65.) For this reason the Court concludes that defendants may not now assert that the termination breached the agreement as well as the Missouri Dealership Act. Because the agreement was terminable at will upon notice and Case gave the requisite notice, defendants cannot meet their burden of demonstrating the existence of a prima facie case for termination in breach of the agreement.
The third counterclaim alleges that Case violated the Missouri Dealership Act by coercing Early's to accept delivery of farm equipment and parts it had not ordered. The conduct complained of occurred on September 26, 1986 and the Missouri Dealership Act came into existence in September 1987. Although the statute provides that it "shall apply to all dealership agreements now in effect and other dealership agreements entered into or renewed after September 28, 1987," Mo.Rev.Stat. § 407.846 (1987) (emphasis supplied), it would be improper to interpret the statute to impose civil liability for conduct which occurred prior to the passage of the statute. Mindful of the "inherent repugnance [with which the] ex post facto imposition of civil liabilities" is viewed, the Court concludes that the Missouri legislature intended to make the statute applicable to all existing and future manufacturer-dealer relationships but not to impose retroactive liability for completed conduct. Ralis v. RFE/RL, Inc., 770 F.2d 1121, 1127 (D.C. Cir.1985). Therefore, there is no legal basis for the imposition of liability under the Missouri Dealership Act for conduct which occurred prior to the effective date of the statute. Thus, Case and Case Credit are entitled to summary judgment on defendants' third counterclaim.
Finally, the Court concludes that Case's request for dismissal of the counterclaims stated on behalf of William and Linda E. Early, as individuals, must be granted. William and Linda Early are not, as individuals, parties to the dealership agreement or "farm equipment dealers" within the meaning of the Missouri Dealership Act. Thus, Early's, Inc., the corporation formed by William and Linda Early for the purpose of carrying on their farm equipment dealership, is the sole party with standing to raise the counterclaims alleged.
NOTES
[1] Inasmuch as defendants raise identical allegations against Case and Case Credit, these entities will be referred to collectively as "Case".