GELCO CORPORATION, Appellee,

The State of Minnesota by Hubert H. Humphrey, III, its Attorney General,

v.

CONISTON PARTNERS; GEL Associates; Paul E. Tierney; Keith R. Gollust; Augustus K. Oliver; Gollust, Tierney and Oliver, Inc.; and GEL Acquisition Corporation, Appellants,

Cubit Corporation, Intervenor in District Court,

v.

GELCO CORPORATION; Samuel D. Addoms; Neil E. Goldschmidt; Harold I. Grossman; Michael J. Morris; Clarence W. Spangle; Jaye F. Dyer; William F. Foss; Andrew C. Grossman; Mark H. Willes; Jack J. Crocker; N. Bud Grossman; M.D. McVay; Sam Singer, Appellees,

and The State of Minnesota by Hubert H. Humphrey, III, its Attorney General.

GELCO CORPORATION, The State of Minnesota, by Hubert H. Humphrey, III, its Attorney General, Appellants,

v.

CONISTON PARTNERS; GEL Associates; Paul E. Tierney; Keith R. Gollust; Augustus K. Oliver; Gollust, Tierney and Oliver, Inc., Appellees,

Cubit Corporation, Appellee,

v.

GELCO CORPORATION; Samuel D. Addoms; Neil E. Goldschmidt; Ha ·old I. Grossman; Michael J. Morris; Clarence W. Spangle; Jaye F. Dyer; William F. Foss; Andrew C. Grossman; Mark H. Willes; Jack J. Crocker; N. Bud Grossman; M.D. McVay; Sam Singer; and The State of Minnesota by Hubert H. Humphrey, III, its Attorney General.

GELCO CORPORATION, Appellant,

The State of Minnesota by Hubert H. Humphrey, III, its Attorney General,

v.

CONISTON PARTNERS; GEL Associates; Paul E. Tierney; Keith R. Gollust; Augustus K. Oliver; Gollust, Tierney and Oliver, Inc., Appellees,

GEL Acquisition Corp., Appellee,

Cubit Corporation,

v.

GELCO CORPORATION; Samuel D. Addoms; Neil E. Goldschmidt; Harold I. Grossman; Michael J. Morris; Clarence W. Spangle; Jaye F. Dyer; William F. Foss; Andrew; C. Grossman; Mark H. Willes; Jack J. Crocker; N. Bud Grossman; M.D. McVay; Sam Singer; and The State of Minnesota by Hubert H. Humphrey, III, its Attorney General.

GELCO CORPORATION; and The State of Minnesota by Hubert H. Humphrey, III, its Attorney General, Appellees,

v.

CONISTON PARTNERS; GEL Associates; Paul E. Tierney; Keith R. Gollust; Augustus K. Oliver; Gollust, Tierney and Oliver, Inc., GEL Acquisition Corporation, Cubit Corporation, Appellant,

v.

GELCO CORPORATION; Samuel D. Addoms; Neil E. Goldschmidt; Harold L. Grossman; Michael J. Morris; Clarence W. Spangle; Jaye F. Dyer; William F. Foss; Andrew C. Grossman; Mark H. Willes; Jack J. Crocker; N. Bud Grossman; M.D. McVay; Sam Singer; and The State of Minnesota by Hubert H. Humphrey, III, its Attorney General.

Nos. 86–2399, 86–5418, 86–5420 and 86–5421.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1986.

Decided Feb. 4, 1987.

Alexander R. Sussman, John Sullivan, Sandra F. Coppola, New York City, George F. McGunnigle, Minneapolis, Minn., H. Kent Munson, Andrew F. Puzder, St. Louis, Mo., for Gelco Corp.

Alan I. Gilbert, Barry R. Greller, St. Paul, Minn., for State of Minn.

Dennis J. Block, Irvin H. Warren, New York City, for Coniston Partners.

Gregory L. Wilmes, Minneapolis, Minn., for Cubit Corp.

Before JOHN R. GIBSON, FAGG, and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

These appeals stem from a battle for control of Gelco Corporation between Gelco's incumbent management and Coniston Partners. Incidents of this struggle included the Gelco board's creation of a Poison Pill, Gelco's self-tender offer, Coniston's acquisition of Gelco stock, and Coniston's tender offer for all of Gelco's outstanding shares. Coniston [1] argues that the district court [2] erroneously refused to preliminarily enjoin Gelco's directors from enforcing a preferred stock purchase rights plan and to order the directors to redeem certain preferred stock issued to Merrill Lynch & Co. or void all voting rights attendant to such stock. —— F.Supp. ——. We conclude that the district court did not abuse its discretion in concluding that Coniston failed to show that it would be irreparably harmed by its inability to proceed with its tender offer. Accordingly, preliminary injunctive relief was properly denied. In related appeals, Gelco and the State of Minnesota argue that the district court erroneously held the Minnesota Control Share Acquisition Act, Minn.Stat. §§ 302A.011 (37)–(41), 302A.449(7), 302A.671 (1984 & Supp. 1985, amended by 1986 Minn.Laws 703, 706), unconstitutional under both the commerce clause and the supremacy clause

and wrongfully enjoined enforcement of the Act as it applied to Coniston's pending tender offer for Gelco shares. In light of Coniston's revocation of its tender offer and its expressed intent not to proceed with a new offer unless the requested injunctive relief is granted, we find the constitutional issues raised in these appeals moot.

## I.

A lengthy discussion of the corporate proceedings relating to these appeals is unnecessary to our decision. Those who are interested may find a more detailed statement in the district court's opinion, Gelco Corp. v. Coniston Partners, 652 F.Supp. 829 (D.Minn.1986). We simply provide a broad overview gleaned primarily from this opinion.

On May 6, 1986, the directors of Gelco Corporation, a Minnesota corporation whose stock is traded on the New York Stock Exchange, adopted a preferred stock purchase rights plan (also referred to by the district court as a Poison Pill), which declared a dividend of one preferred stock purchase right for each outstanding share of Gelco stock. In essence, this plan allows the holder of each right (the acquiring person excluded) to purchase $126 in Gelco stock for $63 when it is announced that a person has acquired or intends to acquire through a tender or exchange offer twenty percent or more of Gelco's outstanding voting stock. If Gelco merges with another entity, this same option exists as to the surviving entity's stock. The rights plan is redeemable by the board prior to the happening of certain events. It also gives the board discretion to unilaterally amend the plan. The district court found that the rights plan, which was adopted before the board knew of any acquisition effort, makes it difficult, but not impossible, to

---

1. In addition to Coniston Partners, the defendants in the district court proceedings included GEL Associates, a Bahamas partnership of which Coniston is the principal limited partner; Keith R. Gollust, Paul E. Tierney, Augustus K. Oliver, and Gollust, Tierney & Oliver, Inc., a principal of Coniston; and GEL Acquisition Corporation, a wholly-owned subsidiary of Coniston. Cubit Corporation, a Gelco shareholder,

intervened in the district court proceedings. Because these parties are similarly affected by the issues addressed in these appeals, we refer to them collectively as Coniston.

2. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

acquire control of Gelco without board approval, but the plan was not adopted solely to entrench incumbent management.

On August 26, 1986, Gelco announced a restructuring plan. The plan called for the sale of four Gelco business units and a self-tender offer to purchase up to three million shares of outstanding common stock for $17–$20, the amount to be determined by dutch auction—a procedure whereby shares tendered for the lowest price are purchased first. This self-tender was to be financed by selling Merrill Lynch up to three million shares of newly issued preferred stock for $20 per share. The preferred shares have voting rights, but there is no voting agreement between Merrill Lynch and Gelco's directors. Gelco may redeem the stock at any time for the original purchase price plus accrued unpaid interest. The Gelco board viewed this transaction as a form of "bridge-financing" for the self-tender offer, financing that would not otherwise have been available because of covenants with Gelco's regular lenders. Coniston argues that the transaction has one purpose—to immunize Gelco's management from hostile tender offers. When Gelco commenced its self-tender offer on August 29, its common stock was trading at $14.875 per share. The original deadline for shareholders to tender was September 26.

On September 25, 1986, Coniston purchased approximately 17.6% of Gelco's outstanding shares. Merger negotiations between Coniston and Gelco commenced. On October 2, the Gelco board met to evaluate Coniston's proposal for a merger transaction at a price of $22.50 per share. Based on reports from its investment bankers and outside legal counsel and the belief that Coniston was a "raider" intending to liquidate Gelco's assets, the Gelco board rejected Coniston's merger proposal as financially inadequate.

Because Coniston's merger proposal caused Gelco's stock price to rise to $23, Gelco cancelled its $17–$20 self-tender offer. Nonetheless, the board reauthorized the sale of preferred stock to Merrill Lynch. Gelco then announced a revised tender offer on October 7 to purchase up to six million shares for $26–$30 per share, the amount to be determined by dutch auction.

On October 24, Coniston commenced a $26 tender offer for all of Gelco's outstanding shares. The offer included, among others, conditions that a court invalidate or Gelco's directors redeem Gelco's purchase rights plan, that the sale of preferred stock to Merrill Lynch be rescinded, and that the Minnesota Control Share Acquisition Act be held invalid.

The Gelco board met on October 30 to evaluate Coniston's tender offer and to consider whether to redeem the rights plan. Partly in reliance on the financial analysis prepared by Merrill Lynch and due to the board's confidence in Gelco's inherent long-term value, the board concluded that Coniston's offer was financially inadequate. It thus rejected Coniston's bid and elected not to redeem the rights plan.

Gelco commenced this action on October 2, 1986, seeking injunctive, declaratory, and other relief to prevent Coniston's alleged violations of federal and state securities laws. That same day Coniston initiated a parallel action in a New York federal court alleging, among other things, that Gelco and its directors violated federal and state securities laws and breached fiduciary duties owed to Gelco's shareholders. On October 9 Coniston's action was transferred to the United States District Court for the District of Minnesota. Coniston subsequently brought its counterclaim seeking, among other relief, a preliminary injunction.

On November 10, 1986, the district court issued its Memorandum and Order to support its November 7 Order, which, in part, denied Coniston's motion to enjoin Gelco from enforcing its purchase rights plan, refused to order Gelco to redeem the Merrill Lynch stock or void any voting rights attendant to such stock, and held the Minnesota Control Share Acquisition Act unconstitutional under both the commerce clause and the supremacy clause.

On November 12, this court denied a stay of the district court's Order pending appeal, but granted an expedited appeal. Later that day, Coniston tendered over 2.2 million shares of Gelco stock pursuant to Gelco's revised self-tender offer. The next day Coniston publicly announced the termination of its tender offer. In its briefs filed with this court, Coniston asserts that it intends to make a new tender offer for all outstanding Gelco shares only if it is granted the relief requested in these appeals.

## II.

In assessing Coniston's requests for preliminary injunctive relief—relief that would have prevented Gelco's board from engaging in certain actions that effectively prevented Coniston from maintaining its tender offer—the district court concluded that Coniston would not be irreparably harmed by its inability to proceed with the plan to obtain control of Gelco. 652 F.Supp. at 844. The court based this conclusion on its factual finding that:

> [T]he loss of Coniston's current bid is primarily a loss of prospective profit. The record shows that Coniston does not intend to operate Gelco, rather it intends to buy Gelco for liquidation purposes. If the injunction is denied, Coniston could prove at trial the difference between the lost liquidation potential and the cost of its bid.

*Id.; see also id.* at 835 ("Coniston also made clear that it was not primarily interested in continued operations of the company."); *id.* at 836 (Gelco's board of directors had the "reasonable perception that Coniston was a 'raider' intending to liquidate the company's assets.") [3]

We analyze Coniston's requests for injunctive relief, as the district court did, under the test articulated in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc) [4], remembering that Coniston bore the complete burden of proving that a preliminary injunction should be granted. *See, e.g., Jensen v. Dole*, 677 F.2d 678, 680 (8th Cir.1982). The decision to grant or deny a preliminary injunction is properly a decision within the sound discretion of the district court and this court is limited to deciding whether there has been an abuse of this discretion. *E.g., Roberts v. Van Buren Pub. Schools*, 731 F.2d 523, 526 (8th Cir. 1984).

■ The threshold inquiry is whether the movant has shown the threat of irreparable injury. The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction, for "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959)); *e.g., Dataphase Sys., Inc.*, 640 F.2d at 114 n. 9; *Harris v. United States*, 745 F.2d 535, 536 (8th Cir. 1984).

The district court's factual finding that "Coniston does not intend to operate Gelco, rather it intends to buy Gelco for liquidation purposes," 652 F.Supp. at 844, is binding for purposes of this appeal unless it is clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). It makes no difference that the dis-

---

**3.** The district court alternatively based its legal conclusion on its factual finding that "it is by no means clear that Coniston will be forever precluded from obtaining control [of Gelco]." 652 F.Supp. at 844. Because we conclude that the district court's factual finding concerning the adequacy of damages sufficiently supports its legal conclusion, we need not address the validity of any other factual findings supporting this conclusion.

**4.** [W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Sys., Inc.*, 640 F.2d at 114.

trict court's finding was based solely on an evaluation of documentary evidence, including affidavits and depositions. *Bessemer City*, 470 U.S. at 574, 105 S.Ct. a⁺ 1512.

█ The record amply supports the district court's finding that Coniston intends to purchase Gelco for liquidation purposes. Tull Gearreald, managing director of Merrill Lynch, testified as to a meeting with Coniston representatives held at Gelco's request. At that meeting, Mr. Gearreald testified, Coniston representatives stated that if Coniston acquired Gelco it intended to perhaps sell parts of Gelco not currently involved in Gelco's restructuring plan, and perhaps liquidate all of Gelco. Gearreald dep. at 94. When asked whether their intent was to own Gelco as an ongoing entity, Coniston's representatives responded that "they were not in the business of operating companies;" "they were in the business of getting the highest return on investment for the owners of Coniston." *Id.* at 97. Consistently, they stated that even if Coniston did not obtain control of Gelco, they could support "a plan of liquidation and subsequent complete liquidation of the company." *Id.* at 95. The deposition testimony of Joseph Francht, a representative of Banque Paribas, Coniston's lender, also supports the district court's finding. He testified that Coniston's representatives manifested an intent to sell a majority or all of Gelco upon acquisition. Francht dep. at 105, 125.

Coniston points to nothing in the record to support a finding that Coniston did not intend to liquidate Gelco, but rather intended to maintain it as a productive entity. Nothing in the record indicates that Coniston viewed Gelco's daily operations as anything but an afterthought; what mattered was the value of Gelco's stock and assets. Coniston does point to evidence tending to prove that it had options other than liquidation; while it had no concrete plans, it did intend to conduct a detailed review if it acquired Gelco and "consider what, if any, changes would be desirable in light of the circumstances which then exist." D.R. at 430–31 (Coniston's Offer to Purchase). The impact of such evidence is diminished, however, by the fact that neither Coniston nor any of its general partners has ever operated a public company. One Coniston representative succinctly described Coniston as "an investment partnership. We buy securities for the purpose of creating gains." Tierney dep. at 13. Another stated that Coniston has "one very simple goal, and that's to make a profit on our investment." Oliver dep. at 18.

We hold that the district court's finding that Coniston intended to liquidate Gelco is not clearly erroneous. At most, the evidence allows two permissible views, one of which the district court reached. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Bessemer City*, 470 U.S. at 574, 105 S.Ct. at 1512. After studying the record, the district court's finding does not leave us with "the definite and firm conviction that a mistake has been committed." *Id.* at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

We now consider whether, based on the factual finding that Coniston intended to liquidate Gelco, the district court abused its discretion in holding that Coniston failed to sustain its burden of showing irreparable harm. The district court relied on *FMC Corp. v. R.P. Scherer Corp.*, 545 F.Supp. 318 (D.Del.1982), to support its conclusion that Coniston would suffer no irreparable harm "[i]f the injunction is denied [because] Coniston could prove at trial the difference between the lost liquidation potential and the cost of its bid." 652 F.Supp. at 844–45. In *FMC Corp.*, a tender offeror and certain minority shareholders sought to enjoin a target company from engaging in certain actions, which, if carried out, would effectively thwart the tender offer. The tender offeror announced that if the tender offer were successful, the target company would then be merged with the tender offeror's subsidiary, and the target company's shareholders would receive $18 per share in the merger. Thus, the target

company's dissident shareholders faced a dilemma like Coniston's: the second-step transaction in which they would receive value for their target company shares could occur only after a successful tender offer, and this offer could be maintained only if the court granted the requested injunctive relief. The *FMC Corp.* court denied the preliminary injunction. If the target company's actions were ultimately proved unlawful, the dissident shareholders would not have suffered irreparable harm, for their injuries—the lost opportunity to participate in a post-tender offer merger— could be remedied in a suit for money damages. *FMC Corp.*, 545 F.Supp. at 322.

■ Coniston[5] stands in the same position. If Gelco's actions are ultimately proved unlawful, Coniston will not have suffered irreparable harm, for its injury— the inability to engage in a post-tender offer liquidation—can be remedied in a suit for money damages, the damage being the difference between the cost of its purchase and the lost liquidation value.

Coniston relies solely on *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264 (2d Cir.1986), to support its argument that damages are an inadequate remedy when a tender offeror is foreclosed from engaging in the transactions that would give it control of the target company. In *Hanson*, however, there was no finding that the tender offeror intended to liquidate, rather than operate, the target company. This distinction between *Hanson* and the case before us is critical. Irreparable harm has been found when one's allegedly unlawful actions will prevent another from acquiring a business for operational purposes or will cause another's on-going business to terminate absent an injunction. *E.g., Ryko Mfg. Co. v. Eden Servs.*, 759 F.2d 671, 673 (8th Cir.1985); *San Francisco Real Estate Investors v. Real Estate Inv. Trust*, 701 F.2d 1000, 1002-03 (1st Cir.1983). But when the party

seeking the preliminary injunction intends to liquidate the business after acquiring it, there is no threat of irreparable harm in the absence of an injunction. *Cf. ABA Distribs., Inc. v. Adolph Coors Co.*, 661 F.2d 712, 714 (8th Cir.1981) (no irreparable injury when distributor in improper distributorship termination action fails to show that, but for the defendant's challenged action, the distributor's business would continue). The district court did not abuse its discretion in denying Coniston's requests for preliminary injunctive relief.

■ After concluding that Coniston failed to show irreparable harm, the district court stated that this conclusion was not "decisive" as to whether preliminary relief should be granted. 652 F.Supp. 845. Accordingly, the district court addressed the probability that Coniston would succeed on the merits of its claims that Gelco's directors breached their duty of care, breached their duty of loyalty, and acted *ultra vires.* We believe the district court need not have engaged in this extended exercise. Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted. *E.g., Sampson v. Murray*, 415 U.S. at 88–92, 94 S.Ct. at 951–53; *Dataphase Sys., Inc.*, 640 F.2d at 114. The equitable balancing test a court must conduct using the *Dataphase* factors requires an initial determination that threatened irreparable harm exists. After determining that there was no irreparable harm because Coniston's alleged injuries could be healed with the balm of money damages, the district court was not required to go further.

The decisive issue before us was simply whether Coniston proved threatened irreparable harm. Because it did not, a discussion of Coniston's substantive allegations adds nothing to the basis for our decision. We thus decline to discuss these issues, despite their interest to some.

**5.** As we stated, our reference to Coniston includes for purposes of this discussion a reference to Cubit Corporation, a Gelco shareholder. Just as Coniston could theoretically obtain damages caused by its inability to receive liquidation proceeds in exchange for its Gelco stock, so could Cubit Corporation.

## III.

 The district court declared the Minnesota Control Share Acquisition Act unconstitutional under both the commerce clause and the supremacy clause.[6] Coniston terminated its initial tender offer on November 13, 1986. Coniston has expressed an intent to bring a new tender offer only if this court grants Coniston its requested injunctive relief and declares the Minnesota Act inapplicable or unconstitutional. Because we have rejected Coniston's claims for injunctive relief, it is apparent that no new tender offer would be forthcoming even if we declared the Minnesota Act unconstitutional. Furthermore, Coniston's failure to acquire any Gelco shares pursuant to its tender offer, coupled with the Minnesota Act's limited remedial provisions, virtually assures that Coniston will not be subjected to any civil or criminal actions by virtue of its failure to comply with the Minnesota Act. *Cf. National City Lines, Inc. v. LLC Corp.,* 687 F.2d 1122, 1125 (8th Cir.1982) (constitutional issues relating to terminated tender offer held justiciable because tender offeror faced both criminal and civil liability for making tender offer without first complying with Missouri Takeover Act).

The parties, especially the State of Minnesota, are undoubtedly interested in having these constitutional issues resolved, for they will quite likely be raised again in the context of another tender offer. But interest, by itself, does not create a justiciable matter. The constitutional issues raised in this appeal are moot. *Cf. Cardiff Acquisitions, Inc. v. Hatch,* 751 F.2d 906, 914, 916 (8th Cir.1984) (declaring constitutional challenges to certain provisions of th Minnesota Corporate Take-Overs Act nonjusticiable).

In conclusion, we affirm the district court's denial of Coniston's requests for preliminary injunctive relief. The constitutional issues raised in this appeal are moot, and we express no opinion as to their merit.

We order that the district court vacate that portion of its decision declaring the Minnesota Control Share Acquisition Act unconstitutional. We are aware that the Supreme Court has scheduled argument in *Dynamics Corp. v. CTS Corp.,* 794 F.2d 250 (7th Cir.1986), *prob. juris. noted,* —— U.S. ——, 107 S.Ct. 258, 93 L.Ed.2d 17 (1986), in March. We are satisfied that if these issues again come before the district court and this court, additional teachings will facilitate their resolution.

---

6. The district court also permanently enjoined application of the Act to Coniston's pending tender offer for Gelco shares. Significantly, this injunction does not and will never again have any effect, for it applied only to Coniston's pending offer, an offer that no longer exists.