Mejah BEN–YONATAN, Plaintiff,

v.

CONCORDIA COLLEGE CORPORATION, d/b/a Concordia College, Defendant.

Civ. No. 4–94–758.

United States District Court, D. Minnesota, Fourth Division.

Sept. 14, 1994.

**984**

Garrett T. Geiger, Aldo J. Terrazes, and Robert Brenner & Associates, P.A., Minneapolis, MN, for plaintiff.

Edward F. Klinger, and Gunhus, Grinnell, Klinger, Swenson & Guy, Ltd., Fargo, ND, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction.[1] Based on a review of the file, record and proceedings herein, the court denies the plaintiff's motion.

## BACKGROUND

This action arises out of the suspension of plaintiff Mejah Ben–Yonatan ("Ben–Yona-tan"), a citizen of the State of Washington, from a private college in Minnesota, for alleged infractions of the student handbook. Ben–Yonatan has attended Concordia College ("Concordia") in Moorhead, Minnesota since 1992.

During the fall of 1993, Ben–Yonatan lived with three women in on-campus housing. In December 1993 the women decided to end their living arrangement with Ben–Yonatan and moved to an apartment off-campus. Following this move, the women began to receive letters, telephone calls and unannounced visits from Ben–Yonatan. The women claim·that Ben–Yonatan also began following them around campus and to their apartment on a regular basis. This unnerving pattern of behavior continued throughout the spring of 1994 and forms the basis for the complaints against Ben–Yonatan.

On January 14, 1994, Ben–Yonatan went to her former roommates' apartment. Ben–Yonatan appeared upset but refused to talk about what was troubling her. The women were frightened because Ben–Yonatan would not promise that she would not harm herself. Finally, fearing for Ben–Yonatan's safety, one of the women called a suicide hotline. After this incident, the women approached the Vice President for Student Affairs, Morris Lanning. Dean Lanning met with Ben–Yonatan on January 18, 1994, and explained the impropriety of repeated unwelcome contact with other students. On January 21, 1994, Ben–Yonatan signed a letter written by Dean Lanning which outlined certain expectations Ben–Yonatan was expected to meet, failure of which would result in her withdrawal from school. The letter stated that Concordia was "very concerned about behaviors that [Ben–Yonatan] exhibited that are affecting both your well-being and the well-being of others. As I indicated to you on January 18th, we cannot and will not allow you to continue behaviors that are potentially

---

**1.** Plaintiff brought a motion for a temporary restraining order, as well as a motion seeking preliminary and permanent injunctive relief. The defendant received notice prior to the hearing and both sides have had the opportunity to present affidavits and legal arguments regarding the issuance of a preliminary injunction. At the hearing, the parties agreed that the court should consider the motion as one for a preliminary injunction. Accordingly, the court treats plaintiff's motion as one for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a). *See Government Suppliers Consolidating Services, Inc., v. Bayh,* 734 F.Supp. 853, 861–62 (S.D.Ind.1990) (citing 11 Wright & Miller, Federal Practice and Procedure § 2951 (1973)).

harmful to you and others." The letter indicated Ben–Yonatan was not to harm or threaten to harm herself or others, not to follow or stalk or impose herself on others, and to meet with a school psychologist and follow the psychologist's recommendations.

Ben–Yonatan, however, continued to contact the former roommates. The contact continued in the form of a series of letters addressed to the women, repeated telephone calls, hang-ups, and uninvited visits to the women's apartment. Dean Lanning again discussed Ben–Yonatan's contact with the women in early March. Dr. Charolette Siemens, a doctor at MeritCare Clinic, also discussed Ben–Yonatan's behavior toward her former roommates. On March 10, 1994, Dean Lanning informed Ben–Yonatan that if her behavior continued, the women planned to press formal charges.

Despite this warning, Ben–Yonatan continued to contact the women, who ultimately filed a formal complaint. On March 22, 1994, in response to the formal complaint, Associate Dean of Students James Meier notified Ben–Yonatan that charges were being brought against her for "harassment and failure to comply." The written Notice of Charges form also detailed the specific rights available to Ben–Yonatan, including a right to a hearing and the right to an appeal.[2] Concordia informed Ben–Yonatan, by letter dated March 24, 1994, that she would be allowed to complete the semester and would receive a one year suspension if she accepted responsibility for the charges. The letter indicated that if she did not accept responsibility, a hearing would be held and the sanctions could be more severe. Concordia also informed Ben–Yonatan's parents on March 24, 1994, that Ben–Yonatan had been formally charged with harassing behavior and failure to comply with orders given to her.

Ben–Yonatan accepted responsibility for the charges on March 24, 1994 but her sus-

pension was deferred until May 9, 1994, in order to allow her to complete the spring semester. Ben–Yonatan appealed her sanction by written appeal. Ben–Yonatan failed to follow the procedures outlined in the Social Responsibility Code as her Notice of Appeal was untimely directed to the President, Dr. Paul Dovre, instead of the College Appeal Board ("Board"). Despite its untimeliness, the Board considered Ben–Yonatan's appeal. The appeal was denied on April 26, 1994, and Ben–Yonatan was informed that the Board's denial was appealable to the president of Concordia College, Dr. Dovre. Dr. Dovre, in a detailed letter dated April 29, 1994, upheld the Board's decision. The suspension, which will expire on May 9, 1995, required that Ben–Yonatan have no contact with the three women who registered the formal complaint, not exhibit similar harassing behavior towards others, and supply written confirmation that she completed psychological counseling.

Ben–Yonatan brought this action seeking to enjoin Concordia College from preventing her registration for the fall 1994 semester. Ben–Yonatan asserts that Concordia violated her Due Process rights under the Fourteenth Amendment and breached its contractual duty to provide certain procedural rights. Ben–Yonatan contends that without injunctive relief she will suffer irreparable harm due to her inability to complete her undergraduate education at Concordia by May 1995.

## DISCUSSION

The court considers four factors in determining whether to grant the plaintiff's motion for a preliminary injunction:

1. Is there a substantial threat that the plaintiff will suffer irreparable harm if relief is not granted;

---

**2.** The rights listed include: 1) the right to a fair and speedy hearing; 2) the right to testify on your own behalf; 3) the right to present evidence and witnesses; 4) the right to the presumption that you are not responsible for the charge(s) until it is proven by the preponderance, or greater weight of the evidence; 5) the right to appeal; 6) the right to be notified in writing of a sched-

uled hearing no less than 48 hours in advance; 7) the right to be assisted in presenting your defense by up to three members of the college community (students, faculty or staff); 8) the right to remain silent; 9) the right to contest the seating of one member of the Board for cause; and 10) the right to question witnesses presenting testimony.

2. Does the irreparable harm to the plaintiff outweigh any potential harm that granting a preliminary injunction may cause the defendant;

3. Is there a substantial probability that the plaintiff will prevail on the merits; and

4. The public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (en banc). The court balances the four factors to determine whether a preliminary injunction is warranted. *Id.* at 113; *West Publishing Co. v. Mead Data Cent. Inc.,* 799 F.2d 1219, 1222 (8th Cir.1986). The plaintiff bears the burden of proof concerning the four factors. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.1987).

### 1. *The Threat of Irreparable Harm*

 Plaintiff must first establish that harm will result without injunctive relief and the harm will not be compensable by money damages. Possible or speculative harm is not enough. The absence of such a showing alone is sufficient to deny a preliminary injunction. *Gelco,* 811 F.2d at 420; *Roberts v. Van Buren Pub. Sch.,* 731 F.2d 523, 526 (8th Cir.1984).

 Ben–Yonatan argues that she will suffer irreparable harm if she is denied the opportunity to complete her undergraduate education at Concordia College by May 1995. Ben–Yonatan asserts that, due to her inability to complete her undergraduate degree in May 1995, she will be unable to enter medical school in the fall of 1995 and, consequently, will lose at least one year of compensation as a medical doctor. Ben–Yonatan has not offered any evidence in support of her claim of irreparable harm. Instead, Ben–Yonatan relies on *Hall v. University of Minnesota,* 530 F.Supp. 104 (D.Minn.1982). In *Hall,* the court found that the plaintiff, a college basketball star, would be irreparably harmed if he was declared ineligible to play basketball in his senior year at the University of Minnesota. *Hall,* 530 F.Supp. at 109. The court stated:

This poses a substantial threat to his chances for a 'no cut' contract in the National Basketball Association, according to his coach, and his overall aspirations regarding a career as a professional basketball player.

*Id.* at 109. The court in *Hall* found it difficult to calculate the damage that would result from a failure to secure a guaranteed or "no cut" contract, a benefit that would be conferred on a second round draft pick but not a sixth round draft pick.[3] *Id.* at 106. It is clear that the harm at issue in *Hall* was not merely a one year loss in NBA compensation, a loss which is compensable by a monetary award; rather, the harm the court found difficult to calculate was the value of a "no cut" contract. The harm Ben–Yonatan alleges is the loss of one year compensation as a medical doctor, a harm which is clearly compensable by monetary damages.

Ben–Yonatan also argues that, in the absence of injunctive relief, she may never be admitted into medical school due to a one year break in her academic record. This argument is purely speculative. Unlike the plaintiff in *Hall,* who produced evidence as to the exact nature of the harm, Ben–Yonatan has not provided any affidavits or evidence in support of this allegation. The court finds that Ben–Yonatan has failed to meet her burden of showing the irreparable harm necessary to justify injunctive relief. This failure is sufficient grounds for the court to deny a preliminary injunction. *See Gelco v. Coniston Partners,* 811 F.2d 414, 420 (8th Cir.1987).

### 2. *The Balance of Harm Between the Parties*

Although the failure to establish irreparable harm precludes injunctive relief, the court elects to address the remaining *Dataphase* requirements. The second *Dataphase* requirement is that the harm to Ben–Yonatan must outweigh the potential harm that granting a preliminary injunction may cause Concordia. *Dataphase,* 640 F.2d at 114. Concordia alleges that granting injunctive

---

**3.** The plaintiff in *Hall* presented affidavits which supported the argument that the plaintiff would be a sixth round draft pick instead of a second

round draft pick if he did not play college basketball for one more year.

relief will jeopardize its ability to protect its students. The court finds that Concordia would be harmed if injunctive relief was granted and, upon balancing the harms, finds the balance weighs against granting injunctive relief.

### 3. *The Likelihood of Success of the Merits*

The third *Dataphase* requirement is that Ben–Yonatan establish a reasonable probability of success on the merits. Ben–Yonatan alleges that she was deprived of due process in violation of the Fourteenth Amendment to the Constitution. The Fourteenth Amendment provides in part that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV.

■ It is well-settled that students at public institutions cannot be arbitrarily disciplined without the benefit of due process. *Dixon v. Alabama State Board of Education,* 294 F.2d 150 (5th Cir.), *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). The only conduct, however, that violates the constitution is that attributable to the state. Thus, the threshold inquiry is whether Concordia's actions constitute state action. Ben–Yonatan alleges that Concordia College receives substantial financial support from both the federal government and the State of Minnesota. Ben–Yonatan also alleges that Concordia College receives this support because it undertakes the essential governmental function of providing education.

■ Ben–Yonatan must demonstrate a reasonable probability that state action, sufficient to invoke the Fourteenth Amendment, can be found in the actions of Concordia College.[4] Not every involvement by the state in the affairs of a private institution supports a Fourteenth Amendment claim. To invoke the constitution, the involvement must be substantial. *Reitman v. Mulkey,* 387 U.S. 369, 375, 87 S.Ct. 1627, 1631, 18 L.Ed.2d 830 (1967); *McVarish v. Mid–Nebraska Com. Mental Health Center,* 696 F.2d 69, 71 (8th Cir.1982); *see also Corso v.*

*Creighton University,* 731 F.2d 529, 531 n. 1 (8th Cir.1984). It is unlikely that Ben–Yonatan can demonstrate state action in this case. Ben–Yonatan alleges that Concordia receives substantial financial support from the federal government and the State of Minnesota. Ben–Yonatan has not provided evidence that Concordia received any support that was not available to other educational institutions. *See Wisch v. Sanford School, Inc.,* 420 F.Supp. 1310, 1313 (D.Del.1976) (stating the involvement must "encompass more than the provisions of certain governmental benefits which are available to all."). Furthermore, the fact that Concordia is in the business of furnishing higher education does not establish state action. *Grafton v. Brooklyn Law School,* 478 F.2d 1137, 1140 (2d Cir.1973). Accordingly, the court concludes that Ben–Yonatan has failed to establish a reasonable probability of success under the Fourteenth Amendment.

■ Ben–Yonatan asserts a contractual claim based on the alleged failure of Concordia to follow the provisions regarding disciplinary proceedings as outlined in the student handbook. The relationship between the parties is contractual in nature, and the terms of the contract may be implied from the student handbook. *Ikpeazu v. University of Nebraska,* 775 F.2d 250, 253 (8th Cir. 1985) (citing *Corso v. Creighton University,* 731 F.2d 529, 531 (8th Cir.1984)). Concordia has promulgated a written code of disciplinary rules and procedures that the institution is to follow. The Concordia College Directory and College Handbook ("Handbook"), which incorporates the Social Responsibility Code by reference, forms the basis of the contractual relationship. The Handbook provides:

> Procedural fair play requires that the student be informed of the charges against him/her, that he/she be given a fair opportunity to refute them, that the institution not be arbitrary in its actions, and that there be provisions for appeal of a decision.

---

4. In contrast to a motion to dismiss for failure to state a claim, the court need not accept the allegations in plaintiff's complaint that state action exists when deciding a preliminary injunction.

The court is convinced that the basic requirements outlined by the contractual provisions were satisfied in this case.

Ben–Yonatan received written notice of the behavior Concordia considered unacceptable as early as January 1994. Ben–Yonatan alleges that Concordia failed to follow the contractual relationship as she was never confronted with a specific or detailed description of the infractions. To support her claim, Ben–Yonatan points to the unspecific charges of harassment and failure to comply that appear on the Notice of Charge forms that she signed. Throughout the spring of 1994, however, Ben–Yonatan was repeatedly and specifically confronted with her unacceptable behavior. She received several opportunities to change her behavior before formal charges were brought. Ben–Yonatan waived her opportunity for a hearing and accepted responsibility for the conduct. She appealed her sanction to the College Appeal Board and the president of Concordia College. The court finds that Concordia followed the procedures proscribed for disciplinary proceedings. Accordingly, the court concludes that Ben–Yonatan will probably not succeed on the merits of her contractual claim.[5]

### 4. *The Public Interest*

The final *Dataphase* requirement is that the court consider the public interest. *Dataphase*, 640 F.2d at 114. The public has an interest in assuring that private institutions comport with general notions of procedural fair play. Concordia, on the other hand, has an interest in providing an educational environment that is free from harassment. The court concludes that the fourth *Dataphase* factor, the public interest, weighs neither in favor of granting nor denying injunctive relief.

### CONCLUSION

The court concludes that Ben–Yonatan has failed to satisfy her burden under *Dataphase* and, accordingly, **IT IS HEREBY OR-**

**DERED** that plaintiff's motion for preliminary injunctive relief is denied.

---

**5.** The court does not address, however, Ben–Yonatan's likelihood of success on the merits of an implied contract of fair dealing and good faith.