**WINDGATE SOFTWARE, L.L.C., a Minnesota Limited Liability Co., Plaintiff,**

v.

**MINNESOTA COMPUTERS, INC., a Minnesota Corporation; Richard Quigley; and Luke Weyrauch, Defendants.**

**Civil File No. 06–4142 (MJD/AJB).**

United States District Court, D. Minnesota.

March 27, 2007.

John R. Shoemaker and Paul F. Shoemaker, John R. Shoemaker & Associates, Edina, MN, for Plaintiff.

Jeffrey D. Shewchuk, Shewchuk IP Services, Eagan, MN, for Defendants.

## ORDER

DAVIS, District Judge.

## I. INTRODUCTION

This case involves a copyright dispute, and is currently before the Court on Plaintiff's Motion for a Preliminary Injunction. [Doc. No. 22.] Oral argument was heard on March 23, 2007.

## II. FACTUAL BACKGROUND

Plaintiff Windgate Software, LLC prepares and publishes a database for non-public, licensed-only use that contains facts, data, and physical descriptions related to parts and equipment employed in pSeries (formerly designated as RS/6000 systems) and iSeries (formerly designated as AS/400 systems) computer platforms manufactured by International Business Machines Corporation ("IBM"). The database is marketed under the name RISC Analysis and may only be accessed by licensed subscribers.[1] The database helps these subscribers identify suitable replacement parts for IBM computers and contains data relating only to IBM's mid-range platforms. Windgate does not buy and sell parts.

Windgate claims that "RISC Analysis is a unique database without any known competitor in the world, including IBM. The database includes the selection, coordination and arrangement of thousands of parts manufactured for the specific IBM pSeries and iSeries platforms and peripheral devices." IBM only publishes limited information to the computer industry and the public related to parts and replacement parts, and Windgate asserts that its

---

1. In the computer industry, the term "RISC" is an acronym for "reduced instruction set computing" and it defines the type of CPU chip used by IBM in its RS/6000 line of products.

database is far superior to anything IBM publishes.

The database is continually updated with new information gathered by Gary Rockley, Windgate's principal owner, and his employees through research, analysis, and verification of existing sources concerning the available parts for IBM mid-range platforms. On January 23, 2006, Windgate registered the RISC Analysis with the Copyright Office ("the Registered Work"). (Def.Ex.7.) The Registered Work contains a four page Overview that states, in pertinent part, the following:

IBM assign[s] Machine and Model numbers to their major products .... based upon a four digit number to identify the Machine ... A three digit alpha numeric code is used to identify models within a Machine Group.

. . . . .

Each model may contain various options ... known as Features .... [which] employ a four digit numbering system ... commonly known as Feature Codes or FCs.

. . . . .

The data contained within RISC Analysis includes a cross reference of Feature Codes to Machines and Models as an original work of authorship.

. . . . .

The data contained within RISC Analysis includes a cross reference of platform specific Feature Codes to PN [part number]/FRUs [field replaceable units], and a cross reference of Machines and Models to PN/FRUs, including alternative and substitute PN/FRUs, as an original work of authorship.

. . . . .

Our work product compilation includes historic PN/FRUs as well as current or new replacement values. To the best of my knowledge and belief, no such compilation exists outside of our work product. This is considered to be an extremely important aspect of the RISC Analysis compilation.

. . . . .

In order for a person to make sense of the LSCFG report, [a report any RS/6000 system user can produce], the PN/FRUs [contained in the LSCFG] must be converted to more meaningful Machine, Model and Feature Code information.... Our work product in collating, grouping and identifying these unpublished PN/FRUs represents original work of authorship.

From a component level point of view, two distinct reference numbers can be used individually to identify specific components. These are the PN and FRU numbers.... A single PN may transit against several different FRU Numbers or a FRU may be represented by multiple PNs.

To the best of my knowledge and belief, neither IBM nor any other party have [sic] issued a reference of PN to FRU numbers as contained within RISC Analysis.

Beyond the Part Number consideration of our compilation, we also review IMB ... Manuals and Announcements for product specific information, to correct for errors and translate from what is often "techno speak" and "marketing blurb" into user comprehensive information.

Typically, we will reduce a 35 page .... document to 5 or 6 pages of usable information, rewritten to correct for errors and technical confusion. As part of our review for errors, we notify IBM of discovered errors in their documentation.

(*Id.* at 4–7.) Windgate characterizes the Registered Work as a "compilation." The Registered Work contains images and graphics, none of which Windgate claims were misappropriated.

The majority of the Registered Work consists of lists containing part numbers, part descriptions, model numbers, and machine numbers. These are divided into three cross-referencing sections: feature code to machine part/machine number index; part number to machine part/machine number index; and part number to feature code index. (*Id.* at 2.) All codes and numbers come from existing sources. The lists also contain descriptions of the parts.

Windgate takes information from the Registered Work and uses it on its riscanalysis.com website. IBM part numbers, IBM machine numbers, IBM model numbers, and FRUs are all displayed along with part descriptions on the RISC Analysis website. (Def.Ex.2.) Website users can conduct queries into part numbers by feature codes, machine numbers, or part numbers. (*Id.*)

Defendant Minnesota Computers ("MC") buys and resells IBM replacement or refurbished parts for the AS/400 and RS/6000 series mid-range platforms from the following websites: www.rs6000dealer.com, www.mncomputers.com, www.wwch.biz, and www.minnesotacomputers.com ("the MC website"). On the MC website, part entries are identified by IBM part number and description only. (Def.Ex.3.) The site contains no cross-references to IBM machine, model, or FRU numbers. (*Id.*) The type of series/system the part fits is identified by platform type: "RS 6000." (*Id.*)

Defendant Weyrauch is an employee of MC and is in charge of MC's websites, servers, computer systems, and database. Weyrauch conducts internet research on many different web pages to learn the part numbers, names, and descriptions of computer parts that MC offers for sale. According to Defendants, when Weyrauch views copyrighted material on the web, he pulls only the part numbers and the factual part names from the websites to input into MC's database. Other MC employees obtain similar information from other sources such as IBM technical documentation and IBM salesperson feedback.

In early 2006, Weyrauch found the riscanalyasis.com website operated by Windgate and signed up for a limited "on-line demo account" as a representative of USA-Printers.biz corporation. Weyrauch admitted in his deposition that he was never an employee of this corporation. With this account, Weyrauch was able to see examples of RISC Analysis website pages. Weyrauch took part numbers, part names, and part descriptions from the website and had this information re-keyed into MC's database.

Windgate sued Defendants claiming that some information in the MC database and on the MC website was obtained in violation of Windgate's copyright. Windgate asserts that out of 7850 records on MC's website, 6685 are exact copies of RISC Analysis website data and descriptions, and 127 are exact copies with only minor spelling and punctuation changes. (Rockley Aff. ¶ 45.) In addition, Windgate notes that the following information from the RISC Analysis website appears on Defendants' websites: "any info to: infor@riscanalysis.com would be appreciated" and "may be TYPO with [another product number]." In the instant motion, Windgate seeks a preliminary injunction order that accomplishes the following:

> [Enjoins] Defendants ... during the pendency of this action, from displaying, reproducing, duplicating, publishing, printing, and/or distributing the copyrighted work owned by Plaintiff and derived from Plaintiff's RISC ... program on any and all internet sites owned, controlled or managed by Defendants ... or on any internet web sites over which the Defendants may exercise con-

trol or management in the future, and from engaging in any such conduct to transmit, store, or display the subject copyrighted work on any third party website, or online storage facility of any kind, until this matter is considered on final hearing.

... [Directs] the Defendants to destroy any and all copies of the Plaintiff's database ... and to certify to the Court its compliance with said order.

(Pl. Mot. P.I. at 1–2.)

## III. DISCUSSION

■ The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions. *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (en banc). This Court must consider (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits. *Id.* "The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability [of success on the merits] test." *Id.* at 113. The question is whether "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113 n. 5.

### A. First Three Factors

■ Windgate argues that without an injunction, it will be irreparably harmed because there is an increased likelihood that its protected materials will continue to be publicly displayed and copied into other websites around the world "by virtue of uncontrolled reproduction and duplication." Thus, the commercial value of its work to its subscribers will be compromised. (Pl. Reply at 12.) As the Court said at oral argument, "This is a money case." When a party's alleged injury can be remedied in a suit for money damages, the party does not demonstrate irreparable harm. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir.1987).

Windgate also argues that the balance of harms favors it because Defendants obtained Windgate's copyrighted information through illicit means and false pretenses. The manner of access to the RISC Analysis website is not at issue. The Court is concerned about the balance of harms between the Parties. Windgate admits that it will only suffer "commercial" harm, and Defendants do not allege they will suffer any harm. Thus, the Court does not find this factor dispositive.

■ Windgate avers that there is no public interest in this case because the only interests are the competing commercial interests of the Parties. The Court agrees. Thus, an analysis of the first three *Dataphase* factors does not favor granting a preliminary injunction.

### B. Likelihood of Success on the Merits

■ Both Parties spend the majority of their briefs discussing Windgate's likelihood of success on the merits. This is the most important *Dataphase* factor. *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir.1998).

■ A party may obtain copyright protection for "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Facts, however, are not subject to copyright protection. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 356, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)(citing 17 U.S.C. § 102(b)). Moreover, the discovery of a fact is not copyrightable. *Id.* at 347,

111 S.Ct. 1282; *Applied Innovations, Inc. v. Regents*, 876 F.2d 626, 636 (8th Cir. 1989). This is true "regardless of the quantum of labor and expense involved." *Woods v. Pro Video Prods., Inc.*, 447 F.Supp.2d 1022, 1030 (D.Minn.2006) (citation omitted).

■■■■ "The sine qua non of copyright is originality." *Feist*, 499 U.S. at 345, 111 S.Ct. 1282. "Original, as the term is used in copyright, means only that the work was independently created ... and that it possesses at least some minimal degree of creativity." *Id.* Because the "originality" standard is easily met, there is a "narrow category of works" that are incapable of sustaining a valid copyright. *Id.* at 359, 111 S.Ct. 1282.

■■■■ Compilations are entitled to copyright protection. 17 U.S.C. § 103(a). The statutory definition of "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutions an original work of authorship." 17 U.S.C. § 101. As copyright protection does not extend to the facts contained in a compilation, copyright protection for such compilations is "thin." *Feist*, 499 U.S. at 349, 111 S.Ct. 1282. Material is, however, subject to copyright protection if the author selects, coordinates, or arranges the facts or data without copying the selection, coordination, or arrangement from another work, provided it meets some minimal level of creativity. *Id.* at 348, 111 S.Ct. 1282. In addition, when individuals begin with "certain discovered facts ... [and then make] certain adjustments on the basis of their expertise," the resulting products are "original expression of those facts ... and as .such are copyrightable." *Applied Innovations*, 876 F.2d at 636.

■■■■ "[W]hen it comes to factual compilations, after *Feist*, it takes virtually 'extensive verbatim copying' to constitute infringement." *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729 (8th Cir.2002). In addition, obvious numerical or alphabetical ordering is not protected. *Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 643 (7th Cir.2003) ("obvious orderings, the lexical and the numeric, have long been in the public domain, and ... cannot be appropriated by claiming copyright").

■■■■ To prevail on a claim of copyright infringement, Windgate must prove: (1) copyright ownership in the database; and (2) "copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361, 111 S.Ct. 1282. There is no dispute as to the first factor. The only question remaining is whether Defendants copied anything that was original to Windgate.

■■■■ The only things Defendants copied from the RISC Analysis website into the MC website were part numbers and part descriptions. IBM part numbers are not Windgate's original materials. The numbers are assigned by IBM and merely constitute facts used in the Registered Work. Therefore, Defendants' use of these numbers does not violate Windgate's copyright.

■■■■ The examples of allegedly infringing part descriptions Rockley provides in his affidavit are unpersuasive. For example, Rockley admits that IBM's documentation for the part identified as PN 80P6975 is: "System backplane (1 W 1.5 GHz DCM processor)." (Rockley Aff. ¶ 61.) After admitting this, Rockley then states that he made the discovery that IBM's description was factually inaccurate, and that PN 80P6975 is "actually for a 2–way processor, not a 1–way processor." (*Id.*¶ 62.) Thus, Rockley's description contained in the Registered Work is: "System backplane (1.5GHz 2–way DCM pro-

cessor)." Rockley copied the IBM description verbatim and merely substituted "2–way" for "1 W." Since discoveries are not copyrightable, Rockley's asserted authorship of the term "2–way" to describe a part that factually is a 2–way part, is not entitled not to any copyright protection. The Court finds that Rockley's other purportedly original descriptions are similar discoveries of facts that are not copyrightable. Thus, an entry such as "80P6975 [part number] System backplane [part name] (1.5GHz 2–way DCM processor) [fact that this system backplane is a certain type of DCM processor] is not copyrightable." *See Feist,* 499 U.S. at 347, 111 S.Ct. 1282. There is nothing creative about these descriptions.

▮ That certain items are types of backplanes, for example, are facts that existed long before Windgate compiled them into its Registered Work and would have continued to exist had Windgate never created a website or obtained a copyright. Thus, these are not original expressions and are not entitled to copyright protection. *Feist,* 499 U.S. at 361, 111 S.Ct. 1282. To the extent Windgate claims protection for correcting IBM's errors, those admitted discoveries are not protected either.

▮ Finally, to the extent Windgate argues that Defendants' inclusion of "any info to infor@riscanalysis.com would be appreciated" and "may be TYPO with [another part number]" are violations of Windgate's copyright, that argument is without merit. The "typo" line is an unprotected discovery of an IBM typographical error. In addition, the Court is not sure how soliciting information can be protected information. There is nothing unique about asking people to contact a business with information. However, the Court need not decide these ultimate issues at this point in the litigation. For purposes of this motion, the Court merely

finds that Windgate has not demonstrated a substantial likelihood of success on the merits sufficient to justify a preliminary injunction. Of course, the Court may decide the ultimate issues differently later in the litigation. *See Smyth v. Rivero,* 282 F.3d 268, 277 (4th Cir.2002) (reasoning that "[t]he fact that a preliminary injunction is granted ... by no means represents a determination that the claim in question will or ought to succeed ultimately"). At this juncture, however, justice does not require the Court to issue an injunction.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** Plaintiff's Motion for a Preliminary Injunction [Doc. No. 22.] is **DENIED.**