**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Plaintiff,**

v.

**YP TEXAS REGION YELLOW PAGES, LLC, Defendant.**

**Case No. 4:13CV01253 AGF.**

United States District Court, E.D. Missouri, Eastern Division.

July 5, 2013.

---

Christopher N. Grant, Loretta K. Haggard, Schuchat and Cook, St. Louis, MO, Matthew G. Holder, David Van OS & Associates, P.C., Austin, TX, for Plaintiff.

Gina Moshiri, James N. Foster, Jr., Stephen B. Maule, McMahon and Berger, St. Louis, MO, for Defendant.

## ORDER DENYING TEMPORARY RESTRAINING ORDER

AUDREY G. FLEISSIG, District Judge.

This matter is before the Court on Plaintiffs motion for a temporary restraining order ("TRO"). A hearing was held July 3, 2013, at which counsel for both parties appeared. Plaintiff ("the Union") and Defendant are parties to a collective bargaining agreement ("CBA") that is effective through December 6, 2013. For the reasons set forth below, the motion for a TRO will be denied.

### BACKGROUND

Defendant, which employs approximately 1,000 employees and whose principle business is the sale and print of online advertising, notified the Union on November 30, 2012, of a force adjustment that would result in the elimination of numerous jobs in the St. Louis, Missouri, area.

Several employees holding "Artist" and "Directory Artist" positions who were to be laid off sought to displace, or "bump," junior employees in five "Creative Artist" positions that were to remain in St. Louis. The employees invoked Article XVII of the CBA, which provides:

> If an employee with over ten (10) years of service is to be laid off ..., the employee may elect, provided the employee is physically qualified, to accept a lateral transfer or a downgrade to a previously held job title in the same metropolitan area occupied at that time by another employee with less seniority.

The employees' requests were denied and the Union filed four grievances on the employees' behalf on March 5, 2013. The grievances convened directly to the second step and are subject to binding arbitration. But the Union decided to hold the arbitration in abeyance, to assess its options. Thereafter, on April 19, 2013, Defendant informed the Union that the five positions the grievants sought to be bumped into would be moved to Georgia, effective July 5, 2013. The Union filed the present motion for a TRO and preliminary injunction on July 1, 2013, requesting a hearing on July 3, 2013. The Union seeks to prevent Defendant from relocating the five positions in question pending the completion of the arbitration regarding the grievants' bumping rights. The Union argues that the relocation of the positions will deprive the grievants of their "bumping" rights, and "would undermine the pending grievances and render them a nullity in abeyance because employees can only bump positions in their metropolitan area." The Union's position is based on its premise that once the positions are relocated, the arbitrator will be unwilling to undo what has already been done, and thus the grievants would suffer irreparable harm.

Defendant argues that the Union's motion should be denied because, among other reasons, the Union has not and cannot demonstrate that it has no adequate remedy at law or that it will suffer irreparable harm if preliminary injunctive relief is denied. According to Defendant, the remedies contemplated by the parties' CBA and readily available to the arbitrator are more than adequate to remedy the Union's or the grievants' claimed injury. At the hearing, Defendant further argued that it would suffer irreparable harm if the Court enjoins it from making business decisions it has a right to make, and would prevent it, for an unknown period of time, from centralizing this creative function in Georgia.

### DISCUSSION

■ In order for a federal district court to issue an injunction to preserve the status quo pending the arbitration of a union's grievance against employer action alleged to violate a CBA, "[t]he underlying dispute must be subject to mandatory arbitration under the labor contract and the injunction must be necessary to prevent arbitration from being rendered a meaningless ritual." *Local Union No. 884 v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1352 (8th Cir.1995) (citations omitted). If these two requirements are met, a union seeking such an injunction must also satisfy the equitable test for a preliminary injunction, which in the Eighth Circuit was set forth in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981). *Id.*

■ *Dataphase* requires a court to consider (1) the threat of irreparable harm to the movant; (2) the balance between the irreparable harm to the movant and the injury that granting the injunction will inflict on the non-movant; (3) the probability that movant will succeed on the merits;

and (4) the public interest. *Dataphase*, 640 F.2d at 113. In each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir.1986). The party requesting injunctive relief bears the complete burden of proving that an injunction should be granted. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987).

█ For the reasons expressed in open court, and set to writing here, the Court finds that while the dispute is subject to mandatory arbitration, the Court cannot find on the record before it that absent an injunction the arbitration would be rendered a meaningless ritual. Both parties admit that a denial of the injunction would not deprive the arbitrator of remedial measures, including the reinstatement of the grievants, or even ordering the positions be transferred back to St. Louis. The Union's argument that the arbitrator would be unwilling to undo what has been done—an argument that also pertains to the claim of irreparable harm under *Dataphase*—is too speculative. The cases that the Union cites in support of its position are inapposite as they all relate to facts that are on a wholly different scale, such as the moving or closing of a plant, involving possibly hundreds of jobs.

For similar reasons the Union has not met its burden on the irreparable harm factor under *Dataphase*, which governs in the 8th Circuit. This is so, not only because of the full scope of remedial action that can be taken by the arbitrator, but also because the individual grievants' injuries can also be addressed monetarily. There is nothing to suggest that Defendant would not be able to meet such an economic remedy, should it be ordered by the arbitrator.

Looking to the balance of the harms, the Union also has not met its burden to demonstrate that the harm to the Union or the grievants if the injunction is not granted exceed the harm to Defendant if the injunction were to be granted. As stated above, the Union has the full panoply of remedies available in arbitration. Defendant, if enjoined, would be prevented—for an indefinite period of time—from implementing its business plan to grow the business in the manner in which it believes most beneficial and necessary.

The Court is unable to assess the merits of the bumping dispute, and the Union has not persuaded the Court or even attempted to persuade the court that it is likely to succeed on the merits. The public interest does not favor either party.

As the Court is being asked to exercise its equitable powers, the Court notes that while not determinative, the Union here made the strategic decision to hold the arbitration in abeyance, a decision that was made before Defendant announced that it was relocating the five positions in question. Such delay makes it more difficult for this Court to justify the grant of extraordinary relief, sought one business day before the positions at issue were to be moved.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Motion for a TRO is **DENIED.** (Doc. No. 4.)

**IT IS FURTHER ORDERED** that on or before **July 8, 2013**, Plaintiff shall file a notice with the Court advising whether it wishes to proceed with its further request for a preliminary injunction.